**SHARONDALE CORPORATION and Kentucky Coal Producers' Self–Insurance Fund, Petitioners,**

v.

**Milford ROSS and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 93–3644.

United States Court of Appeals, Sixth Circuit.

Submitted May 13, 1994.

Decided Dec. 16, 1994.

John W. Palmore (briefed), Jackson & Kelly, Lexington, KY, for petitioners.

William L. Roberts (briefed), Pikeville, KY, for Milford Ross.

Karen Blank (briefed), U.S. Dept. of Labor, Office of the Solicitor, Washington, DC, for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before: SUHRHEINRICH and BATCHELDER, Circuit Judges; and RUBIN, District Judge.*

SUHRHEINRICH, Circuit Judge.

Sharondale Corporation and Kentucky Coal Producers' Self–Insurance Fund (collectively referred to as "Sharondale") seek review of an award of federal black lung benefits pursuant to the Black Lung Benefits Act ("Act"), 30 U.S.C. §§ 901–945, to its former employee, Milford Ross ("Ross"). Sharondale argues that Ross's claim was untimely under 20 C.F.R. § 725.308; and, that Ross failed to establish a "material change of condition" as required by 20 C.F.R. § 725.309(d). We hold that Ross timely filed his claim and remand this matter for further proceedings on the issue of whether Ross established a material change in his condition.

## I.

Claimant Milford Ross began working in the coal industry in 1967, but quit his job at Stern Mining Company in 1979, on the advice of his doctor because of breathing problems. Ross filed a Kentucky Workers' Compensation claim for occupational disease benefits, a social security disability claim, and a federal black lung claim that same year. Ross received 100 percent state occupational disability benefits and social security disability benefits as a result; however, Ross's federal black lung claim was denied in 1981. Ross then accepted a job at Sharondale as a cutting machine operator and worked there until November 24, 1983, when he again quit because of breathing problems. He filed the present claim for benefits under the Act in 1985.

■ After a formal hearing on the 1985 claim, an administrative law judge ("ALJ") awarded benefits. The United States Department of Labor, Benefits Review Board ("Board") affirmed the decision of the administrative law judge. Sharondale appeals the Board's order. We must affirm the Board's decision provided it has committed no legal error nor exceeded its scope of review of the ALJ's factual determinations. *Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532, 536 (6th Cir.1990).

## II.

■ The first issue presented is whether Ross timely filed his 1985 claim for benefits. The statute of limitations contained in § 422(f) of the Act is implemented by 20 C.F.R. § 725.308. Under § 725.308(a) of the regulations, a claim for benefits must be "filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner...." 20 C.F.R. § 725.308(a).

The ALJ held that Ross timely filed his claim, reasoning that because Ross worked for a substantial period of time after the doctor advised him to quit because of breathing problems, he was not totally disabled due to pneumoconiosis in 1979. Thus, the ALJ concluded, the earlier notification of disability was erroneous, and the later medical diagnosis triggered the running of a new three year period in which a claim must be filed.

The Board did not adopt the ALJ's reasoning; instead it relied on its own interpretation of § 725.308 to affirm the ALJ's holding. The Board stated that § 725.308 only applies to the filing of a miner's initial claim. *See Faulk v. Peabody Coal Co.*, 14 BLR 1–18 (1990). Thus, according to the Board, subsequent filings need not comply with the statute of limitations. Thus, if the initial filing was timely, relief may be granted on a subse-

---

* The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation.

quent application provided a substantial change in condition is shown.

Sharondale contends that, under the ALJ's construction of the regulation, it is saddled with a claim from 1979, because a medical determination of total disability, erroneous or not, had been communicated to Ross in 1979, when he received state occupational and social security disability benefits. Additionally, Sharondale contends that the Board's broad interpretation of the regulation deprives it of the opportunity to rebut proof developed in any prior proceedings and denies it the protection of notice.

If we accept Sharondale's recitation of the facts, its argument that Ross filed the present claim three years after the statute had run might be correct. Sharondale overlooks, however, additional facts that nullify its position. First, after the final denial of Ross's first claim, Ross returned to work as a miner. Secondly, Ross worked for several years before a doctor again declared him disabled by pneumoconiosis. Thirdly, Ross filed his second claim within three years of this later medical determination.

■ When we review these additional facts, in light of past recognition that the "Act is remedial legislation that should be liberally construed so as to include the largest number of miners within its entitlement provisions," *Adams v. Director, OWCP,* 886 F.2d 818, 825 (6th Cir.1989) (citations omitted), we are convinced that Ross's claim was timely.

Admittedly, the circumstances of this case are unusual in that the claimant commenced work with a new employer after his first claim for benefits under the Act was denied. However, Sharondale's concern about rebutting proof developed in Ross's initial claim is unwarranted. It is apparent that the previous employer sufficiently rebutted the proof developed in the prior proceedings because those benefits were denied. More importantly, the claimant cannot prevail on a duplicate claim unless he shows a "material change" in his condition; thus, the critical evidence in assessing whether to reopen the claim is the evidence accruing since the previous denial. That evidence arose during Ross's last two years of employment with Sharondale. Consequently, Sharondale was perfectly situated to defend against Ross's 1985 claim, a claim for which it received notice.

■ Nevertheless, we need not hold, as did the Board, that § 725.308 only applies to the filing of a miner's initial claim, to decide this case. Under § 725.308(a), the time period in which a miner must file for benefits starts, at a minimum, after each denial of a previous claim, provided the miner works in the coal mines for a substantial period of time after the denial and a new medical opinion of total disability due to pneumoconiosis is communicated. The progressive nature of the disease dictates this result; a claimant must be free to reapply for benefits if his first filing was premature. Furthermore, the Act recognizes that sequential claims may be filed; and for the Act to recognize serial applications on the one hand, while limiting to three years the time in which all applications must be filed, on the other, makes no sense.

Accordingly, we hold that Ross timely filed his 1985 claim.

### III.

■ The second issue presented is whether the record evidence established a "material change" in Ross's condition. Under 20 C.F.R. § 725.309(d), when a claimant files more than one claim for benefits, the later claim is merged with the earlier claim if the earlier claim is pending. If an earlier claim has been denied, however, the later claim is likewise denied "unless the deputy commissioner determines that there has been a material change in conditions or the later claim is a request for modification and the requirements of § 725.310 are met." 20 C.F.R. § 309(d). Here, the later claim was filed more than a year after the denial of the first claim, thus the claim is not a request for modification under the regulation and Ross must show a material change in his condition.

In Ross's first claim, an ALJ found that the x-ray evidence failed to establish the presence of pneumoconiosis. In the present claim, the ALJ found that "the x-ray evi-

dence is now considered to be positive for the presence of pneumoconiosis." On this basis, the ALJ held that a "material change" had occurred. The Board affirmed, citing *Spese v. Peabody Coal Co.*, 11 BLR 1–174 (1988) (requiring that the new evidence present a "reasonable possibility" that it would change the prior administrative result). Under the *Spese* formulation, the ALJ reviews only the *favorable* new evidence and does not weigh that evidence against *unfavorable* new evidence.

Before we consider whether the evidence established a material change in Ross's condition, we must determine the proper standard by which to measure the existence of a "material change." Three constructions are before the court: the *Spese* construction, relied upon by the Board in affirming the ALJ's decision to award benefits; the *McNew* construction, enunciated by the Seventh Circuit in *Sahara Coal Co. v. Director, OWCP*, 946 F.2d 554, 556 (7th Cir.1991); and the construction advocated by the Department of Labor. Each is discussed below.

■ Initially, we note that because the Board acts as an adjudicatory tribunal and does not make rules or formulate policy, its interpretation is not entitled to any special deference. *See Saginaw Mining Co. v. Mazzulli*, 818 F.2d 1278, 1283 (6th Cir.1987) (quoting *Potomac Elec. Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514–15 n. 18, 66 L.Ed.2d 446 (1980)). Accordingly, we reject the *Spese* standard because, in our view, it confuses the delineation in § 309(d), which limits requests for modification of a decision wrongly decided to be filed within one year with requests based on a material change in condition. At issue under the material change provision is relief from the principles of finality for those miners whose conditions have deteriorated due to the progressive nature of black lung disease. Presentation of new evidence that establishes a reasonable possibility that it would change the prior administrative result is a standard so broad that it includes evidence never presented but available at the time of the initial claim. Such evidence, although relevant to a request for modification, is not relevant in establishing a material change and should not be considered.

The Seventh Circuit has also rejected the Board's interpretation and has articulated its own standard for assessing whether the claimant has established a material change in his condition. *Sahara Coal Co. ("McNew")*, 946 F.2d at 556.[1] Under the *McNew* standard, a material change in condition means either that "the miner did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by it, or that his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." *Id.* at 556.

In articulating the *McNew* standard, the Seventh Circuit recognized that a literal interpretation of the standard would require a claimant to prove that he was not totally disabled at the time of his first application and that he was not suffering from pneumoconiosis. The court stated that the standard should be read practically; thus, the standard means that the claimant must show that his condition was either "substantially worse" than it was at the time of his prior application or, if the condition were slightly worse, "that even a slight worsening could be and was a material change in his condition." *Id.* at 558.

■ Although *McNew* is a reasonable interpretation of material change and this circuit has applied the *McNew* standard in an unpublished opinion, *McGuire v. Little Bill Coal Co.*, No. 93–3008, 1994 WL 3349, at *2–3 (6th Cir. Jan. 5, 1994) (unpublished), here the Director of the Office of Workers' Compensation Programs, DOL ("Director"), has offered a competing interpretation of the regulation. Under the Director's interpretation, to assess whether a material change is established, the ALJ must consider all of the new evidence, favorable and unfavorable, and determine whether the miner has proven at least one of the elements of entitlement previously adjudicated against him. If the miner establishes

---

1. Even after the decision in *McNew*, the Board continues to apply the *Spese* standard to duplicate claims, "except those arising within the jurisdiction of the United States Court of Appeals for the Seventh Circuit." *Shupink v. LTV Steel Co.*, 17 BLR 1–24 (1992).

the existence of that element, he has demonstrated, as a matter of law, a material change. Then the ALJ must consider whether all of the record evidence, including that submitted with the previous claims, supports a finding of entitlement to benefits.[2]

Although we are presented with competing judicial and agency interpretations of the material change provision contained in § 725.309(d), our discretion in adopting one construction over another is not unfettered.[3] This court has "previously afforded due deference to the Director's position in cases raising similar questions of regulatory interpretation." *Brown v. Rock Creek Mining Co.*, 996 F.2d 812, 816 (6th Cir.1993) (citing *Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1268 (6th Cir.1989)); *Saginaw Mining Co.*, 818 F.2d at 1283.

In *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991), the Supreme Court discussed "the principles underlying judicial deference to agency interpretations, as well as the scope of authority delegated to the Secretary of Labor" in administering the Act. The Court noted that the Act reflects that Congress intended to delegate "broad policy-making discretion in the promulgation" of the regulations, and "[w]hen Congress, through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policy-making authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited." *Id.*

The Court did not expressly find that the provisions of the Act were ambiguous; however, it noted that the Act established a "complex and highly technical regulatory program" which necessitated some level of expertise in identifying and classifying medical eligibility criteria. *Id.* The Court reasoned that because such judgment implicated policy concerns, courts must defer to the agency "entrusted by Congress to make such

policy determinations." *Id.* (citing *Martin v. OSHRC*, 499 U.S. 144, 152–54, 111 S.Ct. 1171, 1177, 113 L.Ed.2d 117 (1991); *Aluminum Co. of America v. Central Lincoln Peoples' Util. Dist.*, 467 U.S. 380, 390, 104 S.Ct. 2472, 2479, 81 L.Ed.2d 301 (1984)).

■ Here, Congress failed to include a definition of "material change" in the Act. Here, as in *Pauley*, the Secretary of Labor's interpretation of the provisions of the Black Lung Act is entitled to deference.

■ This deference is conditioned, however, on the reasonableness of the agency interpretation. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984). We may not substitute our own construction of the regulation for the Director's unless his is unreasonable. *Id.* Here, the Director's interpretation is premised on the notion that miners disabled by pneumoconiosis arising out of coal mine employment are entitled to benefits under the Act. It affords a miner a second chance to show entitlement to benefits provided his condition has worsened. The interpretation implicitly recognizes that the doctrine of res judicata is not implicated by the claimant's physical condition or the extent of his disability at two different times. The entitlement is not without limits, however; a miner whose condition has worsened since the filing of an initial claim may be eligible for benefits, but after a year has passed since the denial of his claim, no minor is entitled to benefits simply because his claim should have been granted. The Director's interpretation takes into account the statutory distinction between a request for modification of the Board's decision and a request for benefits based on a material change in condition. Accordingly, we find the Director's interpretation to be reasonable in light of the purpose of the statute and the language included in § 725.309(d).

---

2. To prove a claim, a miner must show that he is totally disabled by pneumoconiosis arising at least in part out of coal mine employment. *See Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1038 (6th Cir.1993).

3. The *McNew* court acknowledged its duty to defer to the Director's interpretation, yet formulated its own in that case because the Director's interpretation merely endorsed, without discussion, the Board's construction of the regulation. *Id.* at 557.

■ Under the Director's interpretation, the ALJ did not properly analyze the facts. In assessing the second claim, the ALJ concluded that because he found the new x-ray evidence established the existence of pneumoconiosis, a material change in Ross's condition had occurred. The record shows, however, that both positive and negative x-ray interpretations by both "B" readers[4] and "non-B" readers accompanied the 1979 claim as well as the 1985 claim. The ALJ never discusses how the later x-rays differ qualitatively from those submitted in 1985. Thus, we are unable to discern on the record before us whether the ALJ merely disagreed with the previous characterization of the strength of the evidence or whether Ross indeed had shown the existence of a material change in his condition since the earlier denial.[5]

Accordingly, we **AFFIRM** the holding that Ross's claim was filed in accordance with the statute of limitations and **REMAND** this case to the ALJ for further proceedings in light of this opinion.

4. A "B" reader is a radiologist who has demonstrated proficiency in assessing and classifying x-ray evidence of pneumoconiosis and greater weight may be given to his diagnosis. *Blackburn v. Director,* 10 BRBS 108 (1979).

5. Additionally, we note that the ALJ relied on the true doubt rule in assessing Ross's claim. Pursuant to the true doubt rule, when the favorable and unfavorable evidence is evenly balanced, the claimant receives benefits. The Supreme Court recently held that the true doubt rule violates § 7 of the Administrative Procedure Act, 5 U.S.C. § 556(d), by shifting the burden of persuasion to the party opposing the award of benefits. *Director, OWCP v. Greenwich Collieries,* —— U.S. ——, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). Accordingly, Ross is not entitled to the benefit of the true doubt rule.