90 F.3d 1502
 WYOMING FUEL COMPANY, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
Nick J. Brandolino, Real Party in Interest.
 No. 94-9576.
 United States Court of Appeals,
Tenth Circuit.
 July 23, 1996.
 
 Ronald E. Gilbertson of Kilcullen, Wilson & Kilcullen, Washington, DC, for Petitioner.
 Jeffrey Goldberg, U.S. Department of Labor, Washington, DC (Thomas S. Williamson, Jr., Donald S. Shire and Patricia M. Nece, U.S. Department of Labor, with him on the brief) for Respondent.
 Sisto J. Mazza, Trinidad, CO, for Real Party in Interest Nick J. Brandolino.
 Before PORFILIO, BRORBY, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 Claimant Nick J. Brandolino brought a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. (the "Act"), against his former employer, Petitioner Wyoming Fuel Co., in 1985. Brandolino had brought a prior claim in 1982, but was denied benefits because he failed to demonstrate any of the elements necessary to establish an entitlement to benefits. In considering Brandolino's 1985 claim, the Administrative Law Judge concluded that Brandolino had proven a material change in his conditions from the earlier denial, thereby permitting him to bring the 1985 claim (the "duplicate claim"). The ALJ also concluded that Brandolino was entitled to benefits from Wyoming Fuel because he had demonstrated that he had pneumoconiosis ("black lung disease") and was totally disabled due to pneumoconiosis. The Benefits Review Board of the U.S. Department of Labor (the "Board") affirmed the ALJ. Wyoming Fuel now appeals.
 
 
 2
 On appeal, Wyoming Fuel raises four issues:
 
 
 3
 I. Whether the regulation permitting duplicate claims under the Black Lung Benefits Act violates the statute of limitations in the Longshore and Harbor Workers' Compensation Act;
 
 
 4
 II. Whether the Act's requirement that a miner bring a claim within three years from the date of a medical determination of total disability due to pneumoconiosis barred Brandolino from bringing his duplicate claim;
 
 
 5
 III. Whether the ALJ and Board applied an invalid standard in deciding whether Brandolino demonstrated a material change in his conditions from the time his first claim was denied; and
 
 
 6
 IV. Whether the ALJ's conclusions that Brandolino is entitled to benefits are supported by substantial evidence.
 
 
 7
 For the reasons stated below, we disagree with Wyoming Fuel on the first and second issues, and therefore AFFIRM the Board's conclusions that the duplicate claim regulation as applied here does not violate any statute of limitations. However, we agree with Wyoming Fuel that the Board applied an invalid standard to decide whether Brandolino demonstrated a material change in conditions. We therefore REVERSE and REMAND for the ALJ to consider: (1) whether further evidence indicates that Brandolino's conditions have materially changed since his first claim was denied under the standard we describe below; and (2) if Brandolino's claims have materially changed, whether Brandolino meets the elements establishing an entitlement to benefits under the Act.
 
 Background
 
 8
 Brandolino, filed his first claim for benefits under the Black Lung Benefits Act on July 6, 1982, at the age of 57, and after 39 years of working in mines.[1] A Department of Labor claims examiner reviewed medical evidence submitted by Brandolino and concluded that the evidence did not show any of the three elements necessary to receive benefits under the Act: (1) the existence of the disease pneumoconiosis; (2) that pneumoconiosis was caused at least in part by coal mine work; and (3) the claimant is total disabled due to pneumoconiosis. See 20 C.F.R. § 718.201-.204. Brandolino did not appeal the determination, but rather continued to work in mines.
 
 
 9
 After working in the mines for another two years, Brandolino filed a duplicate claim on October 1, 1985, over three years after he filed his first claim. 20 C.F.R. § 725.309 ("Section 309") permits a duplicate claim when the claimant demonstrates a "material change in conditions."[2] Following a July 22, 1992, hearing at which several medical experts testified, ALJ Samuel J. Smith concluded that Brandolino had demonstrated a material change under Section 309 and reversed the decision of a deputy commissioner. The ALJ also found Brandolino entitled to benefits under the Act by concluding that the evidence proved: (1) Brandolino suffered from pneumoconiosis; (2) Brandolino's pneumoconiosis was caused at least in part by his coal mine work; and (3) Brandolino was totally disabled due to pneumoconiosis. The Board affirmed the ALJ on all grounds, and rejected Wyoming Fuel's argument that Brandolino's duplicate claim was untimely because it was not brought within three years from the date a medical determination of total disability due to pneumoconiosis was communicated to him. See 30 U.S.C. § 932(f); 20 C.F.R. § 725.308(a). Wyoming Fuel timely filed this appeal against the Director of the Office of Workers' Compensation Programs for the U.S. Department of Labor (the "Director") and Brandolino.
 
 Standard of Review
 
 10
 When reviewing the Board's decision, our role is to "scrutinize the [Board's decision] for errors of law and for adherence to the substantial evidence standard governing the Board's review of the administrative law judge's factual determinations." Maddaleni v. Director, OWCP, 961 F.2d 1524, 1525 (10th Cir.1992) (quotation omitted). The Board cannot uphold the ALJ's findings and conclusions unless the findings are supported by substantial evidence and the conclusions are in accordance with the law. Davis v. Director, OWCP, 936 F.2d 1111, 1114 (10th Cir.1991). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Hansen v. Director, OWCP, 984 F.2d 364, 368 (10th Cir.1993) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "In determining whether substantial evidence exists, the court cannot reweigh the evidence, but may only inquire into the existence of evidence to support the trier of fact." Id. (quotation omitted).
 
 
 11
 When we review the Board's interpretation of either the Black Lung Benefits Act, or the black lung regulations promulgated by the Secretary of Labor, we must keep in mind that the Board is only a " 'quasi-judicial body which is empowered to resolve legal issues, but not to engage in overall administration through rule-making.' " Bridger Coal Co./Pac. Minerals, Inc. v. Director, OWCP, 927 F.2d 1150, 1153 (10th Cir.1991) (quoting William Bros., Inc. v. Pate, 833 F.2d 261, 264 (11th Cir.1987)). Therefore, neither the Board's interpretation of the Act, nor its interpretation of the regulations, is entitled to any special deference by the courts. See Lukman v. Director, OWCP, 896 F.2d 1248, 1250-51 (10th Cir.1990). Instead, "[w]e exercise plenary review in determining whether the Board's interpretation of [a black lung regulation] is consistent with Congress's intent as expressed in the Act." Bridger, 927 F.2d at 1153. However, the Secretary of Labor's interpretation of black lung regulations is entitled to "substantial deference." Lukman, 896 F.2d at 1251.
 
 
 12
 I. Section 309 does not violate the Longshore Act's
 
 
 13
 requirement that claimants must challenge a claim
 
 
 14
 within one year.
 
 
 15
 Wyoming Fuel argues that allowing Brandolino to bring a duplicate claim pursuant to Section 309 violates the statute of limitations at Section 22 of the Longshore Act, which provides that a claimant must challenge a rejection of a claim within one year. See 33 U.S.C. § 922.[3] However, 30 U.S.C. § 932(a)--the provision of the Black Lung Benefits Act that incorporates the Longshore Act--adopts the Longshore Act's provisions "except as otherwise provided in this sub section or by regulations of the Secretary...." 30 U.S.C. § 932(a).[4] Therefore, Section 309, a regulation of the Secretary, properly preempts incorporation of 33 U.S.C. § 922's one-year limitation period. See Lukman v. Director, OWCP, 896 F.2d 1248, 1253-54 (10th Cir.1990) (recognizing that purpose of Section 309 was to permit new claims to be filed when more than a year has passed since the first claim was denied).
 
 
 16
 II. Section 309 does not violate the Act's requirement that
 
 
 17
 miners bring claims within three years of a
 
 
 18
 medical determination of total
 
 
 19
 disability.[5]
 
 
 20
 Wyoming Fuel argues that permitting Brandolino to bring a duplicate claim pursuant to Section 309 also violates the statutes of limitations at 30 U.S.C. § 932(f) and 20 C.F.R. § 725.308(a) ("Section 308(a)"), which require that a miner bring a claim within three years from the date a medical determination of total disability due to pneumoconiosis is communicated to the miner.[6] Wyoming Fuel argues that results of a blood gas test performed in July, 1982, by Dr. Michael T. Saiz in connection with Brandolino's first claim, as well as a diagnosis of chronic bronchitis by Dr. Saiz, provided Brandolino with a medical determination of total disability due to pneumoconiosis. Therefore, under Wyoming Fuel's theory, Section 308(a) bars Brandolino's Oct. 1, 1985 claim.
 
 
 21
 In affirming the ALJ's decision, the Board stated that it consistently has held that the three-year limitations period does not apply to duplicate claims. The Board reasons that because pneumoconiosis is a progressive disease, the need for providing notice to an employer of a claim within a certain time period is diminished following the filing of a prior claim. See Faulk v. Peabody Coal Co., BRB No. 88-217 BLA, 1990 WL 284143, at * 2 (Ben.Rev.Bd. May 22, 1990). This rule "satisfies the purpose of the statute of limitations by ensuring that [an] employer is provided notice of the current claim and of the potential for liability for future claims, in view of the progressive nature of pneumoconiosis." Id. Wyoming Fuel argues that this reading is inconsistent with the plain language of the statute and regulation, which do not exempt duplicate claims from their three-year limitations period. The Director responds that requiring claimants to file duplicate claims within three years of the triggering medical opinion would defeat most miners' ability to bring duplicate claims because it may take more than three years from the issuance of a medical opinion before an ALJ and appellate panels decide the original claim.
 
 
 22
 We agree with the Director that Brandolino's duplicate claim did not violate the Act's three-year limitations period, although we rest our conclusion on the fact that the claims examiner in 1982 expressly held that Brandolino was not totally disabled due to pneumoconiosis.[7] When a doctor determines that a miner is totally disabled due to pneumoconiosis, the miner must bring a claim within three years of when he becomes aware or should have become aware of the determination. However, a final finding by an Office of Workers' Compensation Program adjudicator that the claimant is not totally disabled due to pneumoconiosis repudiates any earlier medical determination to the contrary and renders prior medical advice to the contrary ineffective to trigger the running of the statute of limitations.[8] As noted by the Director, imposing a three-year statute of limitations on all duplicate claims based on the date of the initial medical opinion of total disability due to pneumoconiosis would in many cases effectively defeat Section 309's provision for duplicate claims because of the time involved in finally adjudicating a claim after a medical determination is made. Wyoming Fuel's interpretation also ignores the nature of pneumoconiosis as a disease that develops progressively and is difficult to diagnose. Instead, Section 309 suggests that a claimant should not be barred from bringing a duplicate claim when his or her first claim was premature because the claimant's conditions had not yet progressed to the point where the claimant met the Act's definition of total disability due to pneumoconiosis. See Sharondale Corp. v. Ross, 42 F.3d 993, 996 (6th Cir.1994). In this case, the claims examiner in 1982 concluded both that Brandolino did not have pneumoconiosis and that he was not totally disabled, notwithstanding the earlier diagnosis and blood gas test by Dr. Saiz. Therefore, the Act's three-year limitations period did not bar Brandolino from bringing his duplicate claim.[9]
 
 
 23
 III. The Board applied an incorrect standard in deciding
 
 
 24
 whether Brandolino demonstrated a material change
 
 
 25
 in conditions.
 
 
 26
 The regulations permit a claimant to bring a subsequent claim after the claimant had been denied benefits in a prior claim. See 20 C.F.R. § 725.309(d). However, before having the merits of such a "duplicate claim" considered, the claimant must first demonstrate as a threshold matter that "there has been a material change in conditions" since the time of the previous denial. Id. The regulations fail to define what a miner must prove to demonstrate such a material change. In the present case, the ALJ applied, and the Board endorsed, the so-called "Spese standard." See Spese v. Peabody Coal Co., BRB No. 86-3316 BLA, 1988 WL 232660 (Ben. Rev. Bd. Sept. 30, 1988). The Spese standard defines proof of a material change of conditions as "that evidence which is relevant and probative so that there is a reasonable possibility that it would change the prior administrative result." Id. at * 2. In deciding whether such a material change occurred under the Spese standard, the ALJ considers evidence supportive of a finding of a material change, but not any contrary evidence. Shupink v. LTV Steel Co., BRB No. 91-1320 BLA, 1992 WL 368663, at * 2 (Ben.Rev.Bd. Oct. 2, 1992). Brandolino argues that the ALJ was correct in applying the Spese standard. Both Wyoming Fuel and the Director argue that the Spese standard is invalid, although they dispute what standard we should apply.
 
 
 27
 Every circuit that has addressed the validity of the Spese standard has rejected it. See Sahara Coal Co. v. OWCP, 946 F.2d 554 (7th Cir.1991) (holding that the Spese standard violates res judicata principles); Sharondale Corp. v. Ross, 42 F.3d 993, 997-98 (6th Cir.1994) (rejecting Spese on res judicata principles but adopting in its place a different standard from Sahara Coal 's test); Labelle Processing Co. v. Swarrow, 72 F.3d 308, 317 (3d Cir.1995) (same as Sharondale Corp.); Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358, 1363 (4th Cir.1996) (en banc) (rejecting Spese standard on vagueness grounds). In Sahara Coal, the Seventh Circuit recognized that the denial of a miner's claim is res judicata once it is final and bars a subsequent application unless there has been a material change in conditions. Id. at 556. "It is not enough that the new application is supported by new evidence of disease or disability, because such evidence might show merely that the original denial was wrong, and would thereby constitute an impermissible collateral attack on that denial." Id. The court therefore considered the Board's Spese standard to be a plain misreading of the regulation which "makes mincemeat of res judicata." Id. It rejected the Spese standard for confusing a change in the claimant's condition with the presentation of newly discovered evidence. Id.[10] Other circuits considering this issue have rejected Spese on similar grounds. See Sharondale Corp., 42 F.3d at 997; Labelle Processing, 72 F.3d at 317.
 
 
 28
 We agree with our sister circuits that the Spese standard violates principles of res judicata by permitting a claimant--when attempting to show a material change--to present evidence that merely shows the initial decision was in error, rather than limiting the evidence presented to that which shows that the claimant's condition has worsened since the previous denial. Instead, in considering whether a claimant demonstrates a material change, the ALJ must apply a standard that denies the claimant the opportunity to relitigate the earlier denial of benefits while permitting the claimant to prove that his or her conditions have worsened materially since the earlier denial.
 
 
 29
 In place of the Spese standard, Wyoming Fuel urges this Court to adopt the standard crafted by the Seventh Circuit in Sahara Coal.[11] There, the court stated that to demonstrate a material change in conditions a miner must establish either: (1) both that the miner did not have black lung disease at the time of the first application but since contracted it and that he has become totally disabled by it; or (2) that the miner's disease has progressed to the point of becoming totally disabling although it was not at the time of the first application. 946 F.2d at 556. However, we find three flaws with the Sahara Coal standard. First, consistent with the Director's concerns, we find discomfort in the fact that the language of the Sahara Coal standard might require a claimant to establish a material change in an element that was not adjudicated in the earlier denial. For example, if the ALJ denied the first claim solely on the grounds that the claimant did not have pneumoconiosis, the claimant should be required to prove that his or her characteristics of pneumoconiosis have become materially more severe since the first denial of benefits. At the same time, the claimant should not be required to prove that his or her disability has materially changed during this time period because there never was a determination that he or she was not totally disabled when benefits were first denied. Second, the Sahara Coal test requires that in order to prove a material change in conditions, the claimant must prove that he or she currently satisfies the elements of an entitlement to benefits. We do not believe, and nowhere do the regulations suggest, that a claimant, in order merely to establish the threshold issue of material change, must go this far. Third, Sahara Coal requires in order to demonstrate material change that a claimant prove that he or she did not meet the elements of entitlement at the time the claim was brought. In effect, Sahara Coal requires the claimant to argue against self-interest by imposing a duty on the claimant to persuade the court that he or she did not meet the elements of entitlement at the time of the prior denial, even though when the claimant brought the prior claim he or she alleged that the elements of entitlement were met. We therefore disagree that a claimant must prove that he or she did not meet a particular element at the time the prior claim was denied so long as the claimant proves that his or her conditions have materially changed from the time of the prior denial.
 
 
 30
 The Director finds similar fault with the Sahara Coal standard. The Director therefore asks us to adopt a rule crafted by the Director and adopted by three other circuits. See Sharondale Corp., 42 F.3d at 998; Labelle Processing, 72 F.3d at 317-18; Lisa Lee Mines, 86 F.3d 1358, 1362. Under the Director's so-called "one-element rule," the ALJ decides whether the new evidence of record, submitted by all parties, establishes at least one of the elements of entitlement previously adjudicated against the miner. If the new evidence establishes an element, the Director's standard infers that this element has materially changed from the time of the previous denial. The elements that can be used to prove a material change are those capable of change such as the existence of pneumoconiosis or total disability. In considering whether a claimant established a material change, the ALJ can consider only new evidence which relates to the conditions at the time of the second claim. If one element is established, a material change has been demonstrated and then the judge considers whether all the evidence of record--including evidence predating the denial of the prior claim--supports an entitlement to benefits. Among the several reasons advanced by the Director in favor of this standard, the Director reminds us that the we must grant deference to the Director's standard so long as we find it reasonable. See Sharondale Corp., 42 F.3d at 998.
 
 
 31
 The Sixth Circuit in Sharondale Corp. agreed with the Director when it selected the one-element standard over the Sahara Coal standard. Although it considered both standards reasonable, the court adopted the Director's standard due to the deference conventionally accorded agency interpretations. 42 F.3d at 997-98. It considered the Director's interpretation reasonable because it "implicitly recognizes that the doctrine of res judicata is not implicated by the claimant's physical condition or the extent of his disability at two different times." Id. at 998. Accord Labelle Processing, 72 F.3d at 317-18; Lisa Lee Mines, at 1362.
 
 
 32
 However, we disagree with these circuits and find the Director's standard to be flawed for four reasons. The first flaw is identical to one of our concerns with Sahara Coal and involves what a claimant must show in order to prove a material change. The Director's standard finds a material change in conditions when a claimant proves that he or she presently meets one of the elements of entitlement. However, we do not believe that to prove material change a claimant must go as far as proving that he or she actually satisfies one of the elements. Instead, a claimant can meet the material change threshold by proving that his or her condition has worsened materially from the time of the prior denial, even if the claimant does not presently meet an element of entitlement.[12]
 
 
 33
 The second flaw relates to which evidence a claimant may present to meet his burden of proving that one of the elements decided against him has materially changed. In meeting this burden, the Director's standard permits a claimant to present any evidence that was not presented at a prior hearing so long as it relates to the miner's conditions at the time of the duplicate claim. Such a standard could allow a claimant to demonstrate a material change using only evidence that shows conditions identical to that presented--and rejected--at the time of the claimant's earlier claim. As noted by the dissent in Lisa Lee Mines, under the Director's standard,
 
 
 34
 [a] claimant, for example, who is denied benefits and then files a duplicate claim accompanied by an additional "probative" x-ray taken after the initial denial that is identical to the x-rays presented with the initial claim would receive black lung benefits on his duplicate claim, notwithstanding that his condition has not changed at all. For, he has, according to the majority, "prove[d], under all of the probative medical evidence of his condition after the prior denial, at least one of the elements previously adjudicated against him." Not only is such a holding irreconcilable with the plain language of section 725.309(d), it "makes mincemeat" of the doctrine of res judicata underlying section 725.309(d) by permitting the previous decision to be reevaluated, as the majority itself says, ad infinitum.
 
 
 35
 See 86 F.3d at 1366 (Luttig, J., dissenting) (citing Sahara Coal, 946 F.2d at 556). We find the same flaw with the Director's standard. The Director's standard does not appear to violate res judicata on its face because whether a miner possesses a particular condition in separate years poses separate questions. At the same time, however, the Director's standard, like the Spese standard, fails to recognize the distinction between an actual worsening in a miner's health and the presentation of evidence tending to show that the prior denial was wrong. Res judicata is not implicated when a miner brings a duplicate claim so long as the claimant demonstrates that his or her physical condition--and therefore the issue before the court--has changed. When the miner does not make such a showing, there is no assurance that the same issue is not being adjudicated in the duplicate claim as in the prior denial. The doctrine of issue preclusion (or collateral estoppel) therefore bars a duplicate claim when a miner fails to present evidence showing that his condition has worsened after his previous claim was denied. See generally 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4402 (distinguishing claim preclusion and issue preclusion).
 
 
 36
 The third flaw with the Director's standard is that the "one-element" aspect of the standard incorrectly enables a claimant to relitigate elements decided against the claimant in the first claim without proving a material change in each particular element decided against him or her. The Director's standard would permit, for example, a claimant who initially was denied benefits both because he or she did not have pneumoconiosis and because he or she was not totally disabled to have the merits of his or her new claim considered merely by demonstrating that the presence of pneumoconiosis has materially changed since the first claim was denied without showing that the severity of his or her disability also has materially changed. Thus, the claimant effectively would be able to reopen the finding of non-disability in violation of res judicata principles without showing any change in that element.
 
 
 37
 Fourth, under the Director's standard, once the claimant meets the material change threshold by proving an element of entitlement based on new evidence, all the evidence of record becomes relevant to deciding whether the claimant meets the remaining elements of entitlement. However, evidence that was considered in rejecting a prior claim is probative only to the miner's condition at the time of the earlier denial. Res judicata bars relitigation of whether the miner met a particular element at the time of the earlier denial.
 
 
 38
 Having considered the various standards, it seems that the Director has made this inquiry needlessly complicated and that all of our concerns are best addressed simply by applying traditional notions of res judicata and the plain language of the statute and applicable regulations. Thus, we hold that in order to bring a duplicate claim, a claimant must prove for each element that actually was decided adversely to the claimant in the prior denial that there has been a material change in that condition since the prior claim was denied.[13] In order to meet the claimant's threshold burden of proving a material change in a particular element, the claimant need not go as far as proving that he or she now satisfies the element.[14] Instead, under the plain language of the statute and regulations, and consistent with res judicata, the claimant need show only that this element has worsened materially since the time of the prior denial. As an example of how a claimant might show a condition has worsened materially, the claimant might offer to compare past and present x-rays reflecting that any conditions suggesting that the claimant has pneumoconiosis have become materially more severe since the last claim was rejected. As another example, the claimant might present more extreme blood gas test results obtained since the prior denial to indicate that his or her disability has becomes materially more severe since the last claim was rejected.[15] However, a new interpretation of an old x-ray that was taken before the prior denial or a further blood gas result identical to results considered in the prior denial does not demonstrate that a miner's condition has materially changed.[16]
 
 
 39
 In the present case, the claims examiner considering Brandolino's 1982 claim concluded that Brandolino did not have pneumoconiosis, that he was not totally disabled due to pneumoconiosis, and that any pneumoconiosis did not arise out of coal mine work. In considering Brandolino's duplicate claim, the ALJ and Board incorrectly applied the Spese standard to decide whether Brandolino demonstrated a material change in any of his conditions. Instead, in order to decide whether Brandolino met the threshold requirement of proving a material change in his conditions, the ALJ should have considered whether, comparing evidence obtained after his prior denial to evidence considered in or available at the time of in his prior claim, Brandolino demonstrated that each of these elements previously found against him have worsened materially since the previous denial.[17] Because the ALJ did not use the proper legal standard to consider Brandolino's change in conditions, and we find insufficient evidence in the record supporting a material change in conditions under the standard discussed above, we must remand action for further proceedings.[18]
 
 
 40
 IV. The ALJ should reevaluate whether Brandolino meets the
 
 
 41
 elements of an entitlement to benefits on remand.
 
 
 42
 In addition to concluding that Brandolino demonstrated a material change under the Spese standard, the ALJ and Board found that Brandolino was entitled to benefits under the Act and regulations because he presently meets each of the three elements of entitlement. Because we remand the threshold question of whether Brandolino's conditions have materially changed since the time of his prior denial, we also remand the determinations that: (1) Brandolino suffers from pneumoconiosis; (2) Brandolino is totally disabled to pneumoconiosis; and (3) Brandolino's pneumoconiosis was caused by coal mine employment. At the same time, we point out three errors committed by the Board and/or the ALJ in determining Brandolino's entitlement to benefits which should be avoided on remand.
 
 
 43
 First, in determining whether Brandolino met the elements of entitlement, the ALJ and Board relied heavily on the opinion of and results obtained by Dr. Saiz. Dr. Saiz, however, performed his examination of Brandolino in 1982 in connection with Brandolino's first claim. Wyoming Fuel argues, the Director concedes, and we agree, that the ALJ and Board should not have considered Dr. Saiz's diagnosis because his report was considered in Brandolino's first claim and rejected as establishing pneumoconiosis. Two other doctors, Dr. Repsher and Dr. Neff did testify that after examining Brandolino, they did not dispute Dr. Saiz's diagnosis of chronic bronchitis. However, because Brandolino presented no evidence that his bronchitis has worsened materially since the time of his earlier denial, res judicata barred his effort to use evidence of the same degree of chronic bronchitis to argue that he suffers from pneumoconiosis.[19]
 
 
 44
 Second, in determining whether Brandolino presently suffers from pneumoconiosis, the ALJ relied in part on an x-ray interpreted by Dr. Harvey W. Phelps as positive for pneumoconiosis. However, a certified "B-reader"--a physician who has demonstrated a proficiency in evaluating chest x-rays and in classifying such x-rays for pneumoconiosis by passing a proficiency examination--read the same x-ray and reached the contrary result by concluding that the x-ray was "completely negative for pneumoconiosis." Dr. Phelps, in contrast, is not a certified B-reader. We consider this distinction in credentials to be significant, and one that should be considered on remand, because the regulations provide that when two or more x-ray reports conflict, "consideration shall be given to the radiological qualifications of the physicians interpreting such x-rays." 20 C.F.R. § 718.202(a)(1).
 
 
 45
 Third, in determining whether Brandolino is totally disabled due to pneumoconiosis under 20 C.F.R. § 718.204(c), it is unclear whether the ALJ balanced five non-qualifying pulmonary function studies against a qualifying blood gas test. The ALJ appeared to dismiss summarily the pulmonary function studies rather than weigh them, having concluded that "pulmonary function studies cannot be used to offset the qualifying blood gas tests...." ALJ Decision at 18 (citing Tussey v. Island Creek Coal Co., 982 F.2d 1036 (6th Cir.1993)). However, we have held that an ALJ must consider all evidence relevant to the issue of total disability under Section 204(c), including that different in kind from the evidence offered by the miner to establish total disability. Bosco v. Twin Pines Coal Co., 892 F.2d 1473, 1479 (10th Cir.1989). Tussey held merely that several non-qualifying blood gas studies were not "contrary" to or a "direct offset" against four qualifying pulmonary function studies because the two tests frequently have no correlation. 982 F.2d at 1040-41. However, the court in Tussey nonetheless considered the non-qualifying blood gas studies to be "probative" and evidence that must be weighed against the qualifying pulmonary function studies. Id. In the present case, it is unclear whether the ALJ weighed the pulmonary function studies or whether he simply dismissed them as irrelevant. Dismissing the pulmonary results summarily would violate the requirement that "even after one of the subsections in § 718.204(c) has been satisfied, the other evidence as it pertains to the other subsections must be considered." Tussey, 982 F.2d at 1041 (citing Bosco, 892 F.2d at 1479-80).
 
 Conclusion
 
 46
 We therefore AFFIRM the Board's conclusions that Section 309's provision for duplicate claims does not violate either the statute of limitations at Section 22 of the Longshore Act or the Black Lung Benefit Act's requirement that miners bring claims within three years of a medical determination of total disability as applied here. However, we consider the Board's and the ALJ's application of the Spese standard to decide whether Brandolino demonstrated a material change in conditions to be improper. We therefore REVERSE and REMAND the ALJ's and the Board's conclusion that Brandolino demonstrated a material change in his conditions thereby permitting him to have the merits of his duplicate claim considered. Because the ALJ and the Board applied an incorrect standard to determine the threshold issue of material change, we also REVERSE and REMAND the determination that Brandolino is entitled to Act benefits. On remand, the parties may present further evidence to establish and rebut whether Brandolino's conditions have materially changed since his prior denial and whether he presently is entitled to benefits.
 
 
 
 [1]
 The Black Lung Benefits Act provides for the payment of benefits to coal miners "who are totally disabled due to pneumoconiosis arising out of employment in one or more of the Nation's coal mines...." 30 U.S.C. § 901(a). The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." Id. § 902(b); 20 C.F.R. § 725.101(20)
 
 
 [2]
 20 C.F.R. § 725.309(d) provides in pertinent part:
 (d) In the case of a claimant who files more than one claim for benefits under this part, the later claim shall be merged with the earlier claim for all purposes if the earlier claim is still pending. If the earlier miner's claim has been finally denied, the later claim shall also be denied, on the grounds of the prior denial, unless the deputy commissioner determines that there has been a material change in conditions or the later claim is a request for modification and the requirements of § 725.310 are met....
 
 
 [3]
 33 U.S.C. § 922 provides, in pertinent part:
 Upon his own initiative, or upon the application of any party , on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, ... or at any time prior to one year after the rejection of a claim, review a compensation case....
 
 
 [4]
 Section 932(a) provides, in pertinent part:
 (a) Benefits; applicability of Longshore and Harbor Workers' Compensation Act; promulgation of regulations
 Subject to section 28(h)(1) of the Longshore and Harbor Workers' Compensation Act Amendments of 1984, [the Longshore Act] shall (except as otherwise provided in this subsection or by regulations of the Secretary and except that references in such Act to the employer shall be considered to refer to the trustees of the fund, as the Secretary considers appropriate and as is consistent with the provisions of section 9501(d) of Title 26), be applicable to each operator of a coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such mine.... In administering this part, the Secretary is authorized to prescribe in the Federal Register such additional provisions, not inconsistent with those specifically excluded by this subsection, as he deems necessary to provide for the payment of benefits by such operator to persons entitled thereto as provided in this part....
 (emphasis added).
 
 
 [5]
 The Director argues that Wyoming Fuel waived this argument because it did not challenge before the ALJ the timeliness of Brandolino's claim under Section 932(f) and 20 C.F.R. § 725.308(a). However, because the Board considered and decided this issue, this Court can consider it on appeal. See Thorn v. Itmann Coal Co., 3 F.3d 713, 717 (4th Cir.1993)
 
 
 [6]
 30 U.S.C. § 932(f) provides:
 (f) Limitation on filing of claims
 Any claim for benefits by a miner under this section shall be filed within three years after whichever of the following occurs later--
 (1) a medical determination of total disability due to pneumoconiosis; or
 (2) March 1, 1978.
 The provision's implementing regulation, 20 C.F.R. § 725.308(a), adds the requirement that the determination of disability be "communicated" to the miner. That regulation provides, in pertinent part:
 A claim for benefits filed under this part by, or on behalf of, a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner or a person responsible for the care of the miner, or within three years after the date of enactment of the Black Lung Benefits Reform Act of 1977, whichever is later....
 
 
 [7]
 We therefore do not decide whether Wyoming Fuel is correct in arguing that the Board's conclusion that Section 932(f) does not apply to duplicate claims is inconsistent with the plain language of the statute
 
 
 [8]
 Because Brandolino did not appeal the claims examiner's decision in 1982, the claims examiner was the final adjudicator of Brandolino's claim. However, the decision that should be examined in deciding whether a medical diagnosis of total disability due to pneumoconiosis has been repudiated by the OWCP is that made by the final adjudicator of the miner's claim, whether it is a claims examiner, an ALJ or the Board
 
 
 [9]
 Because the claims examiner's 1982 finding of no pneumoconiosis and no total disability repudiates any earlier medical determinations against him, we need not decide whether Dr. Saiz's 1982 report adequately constituted a medical determination of total disability due to pneumoconiosis under the Board's standard. See Adkins v. Donaldson Mine Co., BRB No. 89-2902 BLA, at 7 (Ben.Rev.Bd. May 27, 1993) (holding that Section 308(a) requires a written medical report found to be probative, reasoned and documented by the administrative law judge indicating total disability due to pneumoconiosis in such a manner that the miner was aware or should have been aware that he was totally disabled due to pneumoconiosis arising out of coal mine employment)
 
 
 [10]
 The court expanded on its reasoning with the following example:
 Suppose for example that in his original application the miner had presented no evidence at all, and had been turned down. He reapplies after the first denial has become final and this time presents an abundance of evidence. If the evidence shows not that his condition has worsened since the first application but merely that he should not have been turned down, he has failed to demonstrate a material change in his condition; he is merely attempting to relitigate his original claim.
 946 F.2d at 556.
 
 
 [11]
 The Sahara Coal standard is also commonly referred to as the McNew standard because Mr. McNew was the claimant in Sahara Coal. See Sahara Coal, 946 F.2d at 556; Labelle Processing, 72 F.3d at 317 n. 14
 
 
 [12]
 Of course, in order ultimately to prevail the claimant must prove each element. However, we are addressing only the threshold showing of material change that a claimant must establish before the merits of the claim even can be examined
 
 
 [13]
 If the final adjudicator of the first claim did not actually decide a particular element in the prior claim, then there is no issue preclusion to the particular issue and the claimant need not prove a material change in this element in order to have the merits of that element considered
 
 
 [14]
 At the same time, the claimant need not affirmatively prove, as Sahara Coal requires, that the claimant did not meet the elements of entitlement at the time of the prior denial
 
 
 [15]
 Evidence from the first claim is relevant, therefore, in determining whether the claimant's condition has worsened
 
 
 [16]
 Similarly, an ALJ cannot consider as evidence that a claimant's condition has worsened any evidence that the claimant could have presented but failed to present as part of an earlier claim, such as an x-ray or blood gas test results taken prior to the time the claimant brought his or her previous claim. Such evidence would not show a change in conditions since the prior denial nor would res judicata allow such evidence to be used because the evidence would be probative only of the miner's condition at the time of the earlier denial
 
 
 [17]
 One of the elements of proving a successful claim for benefits is showing that any pneumoconiosis arose at least in part out of coal mine employment. See 20 C.F.R. § 718.203. Unlike the other two elements of a benefits claim--the existence of pneumoconiosis and total disability--this element is not technically progressive; a claimant's pneumoconiosis either did or did not arise out of coal mine work. Therefore, this element has no meaning in a context where the claimant has been found not to have pneumoconiosis and a claimant need not demonstrate a material change in this element when the ALJ in his prior claim decided the claimant did not have pneumoconiosis
 
 
 [18]
 We note that both the Director and Wyoming Fuel agreed at oral argument that if we rejected the Spese standard, we would be obligated to remand this case
 
 
 [19]
 Dr. Repsher's and Neff's testimony does not meet the threshold of establishing a "material change" in Brandolino's chronic bronchitis. Dr. Neff testified only that Brandolino "continues to have bronchitis"--not that Brandolino's bronchitis has become more severe. Similarly, Dr. Repsher testified only that he had "no reason to argue with" Dr. Saiz's diagnosis of chronic bronchitis. Because neither doctor testified that Brandolino's chronic bronchitis has become materially more severe since the time he first was denied benefits, the claims examiner when considering Brandolino's first claim already considered and rejected the identical evidence in finding that Brandolino does not have pneumoconiosis. Therefore, res judicata bars Brandolino from using this evidence to demonstrate that he has pneumoconiosis unless he presents evidence that his condition has worsened materially