**Bobby MYERS, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Respondent.**

No. 00–4528.

United States Court of Appeals, Sixth Circuit.

Sept. 17, 2001.

Before SILER and CLAY, Circuit Judges; GRAHAM, District Judge.*

*ORDER*

Bobby Myers, proceeding pro se, petitions for review of the Benefits Review Board's (Board's) decision and order denying his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Myers's original claim for benefits was denied on December 12, 1989, upon a find-

---

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

ing that Myers had established none of the elements of entitlement. He filed a second claim on February 12, 1993, which was analyzed under the duplicate claim provision of the regulations. The district director determined that Myers had established that he suffered from a totally disabling respiratory impairment, but that he had shown neither the presence of pneumoconiosis nor that his total disability was due to coal mine employment. The claim was then considered by an administrative law judge (ALJ), who conducted a hearing and issued a decision and order denying benefits on May 18, 1999. The ALJ found that Myers had ten years of qualifying coal mine employment and a 40 pack-year history of cigarette smoking. The ALJ agreed that Myers had established a material change in condition since the denial of his prior claim by showing that he was totally disabled from a respiratory standpoint. However, the ALJ also found that Myers had failed to establish the other elements of entitlement to black lung benefits. The Board affirmed the ALJ's decision and order on June 29, 2000, and denied Myers's requests for reconsideration.

In his petition for review, Myers argues that the ALJ erred by finding that his severe chronic obstructive pulmonary disease was not caused by his ten years of inhaling coal mine dust.

This court must affirm the Board's decision if the Board has not committed any legal error or exceeded its scope of review of the ALJ's determination. *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir.1998). The court reviews the ALJ's decision only to decide whether it is supported by substantial evidence and is in accordance with the applicable law. *Id.* This court does not reweigh the evidence or substitute its judgment for that of the ALJ. *Gray v. SLC Coal Co.*, 176 F.3d 382, 387 (6th Cir.1999). Thus, as long as the ALJ's conclusions are

supported by the evidence, they will not be reversed, "even if the facts permit an alternative conclusion." *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir.1995).

Because Myers's second application for benefits was filed more than one year following the final denial of his prior claim, it was properly analyzed as a duplicate claim. Pursuant to 20 C.F.R. § 725.309(d), it is the claimant's burden to show a material change in his condition before he is entitled to further adjudication. *Sharondale Corp. v. Ross*, 42 F.3d 993, 996 (6th Cir. 1994). To assess whether a material change is established, the ALJ must consider all of the new medical evidence obtained after the previous denial, both favorable and unfavorable, and determine whether the miner has proven at least one of the elements of entitlement previously adjudicated against him. *Id.* at 997–98. If the miner establishes the existence of that element, he has demonstrated, as a matter of law, a material change, and the ALJ must then consider whether *all* of the record evidence, including that submitted with the prior claim, supports a finding of entitlement to benefits. *Id.*

Pursuant to 20 C.F.R. Part 718, in order to establish entitlement to benefits, a miner must show that: (1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; and (3) the pneumoconiosis rendered him totally disabled. 20 C.F.R. § 718.202–04; *Adams v. Director, OWCP*, 886 F.2d 818, 820 (6th Cir.1989). He must prove each element by a preponderance of the evidence, except insofar as he is aided by a presumption. *Id.*

In this case, the Director concedes that Myers has demonstrated a material change in condition by establishing that he is totally disabled due to a respiratory impairment. Thus, the ALJ properly ex-

amined all of the medical evidence of record to determine whether Myers has also established that he suffers from pneumoconiosis and that his totally disabling respiratory impairment is due to his pneumoconiosis.

Upon review of the record in this case, we find that the ALJ's determination that Myers has failed to establish pneumoconiosis pursuant to § 718.202(a)(1)-(3) is supported by substantial evidence and is in accordance with the law.

Pursuant to § 718.202(a)(4), a claimant may establish pneumoconiosis by a physician's reasoned medical judgment. In weighing a physician's report, the ALJ may take into consideration a number of factors, including the length of time the physician has treated the miner, the qualifications of the physician, the recency of the report, and whether the report is adequately documented and based on accurate data. *See, e.g., Gray,* 176 F.3d at 388; *Brown v. Rock Creek Mining Co.,* 996 F.2d 812, 816 (6th Cir.1993); *Phillips v. Director, OWCP,* 768 F.2d 982, 984 (8th Cir. 1985); *Director, OWCP v. Rowe,* 710 F.2d 251, 255 (6th Cir.1983). This court will defer to the ALJ's determination of credibility and resolution of inconsistencies in testimony, including the weight to be accorded to physicians' opinions, where the ALJ's determinations are supported by substantial evidence. *Consolidation Coal Co. v. Worrell,* 27 F.3d 227, 231 (6th Cir. 1994).

The record contains eight medical reports authored by four physicians. The ALJ discounted the opinions of Dr. Gimenez as inconsistent and "troubling." The ALJ questions Dr. Gimenez's characterization of himself as the claimant's treating physician, in part because a different doctor was identified as his personal physician in a 1998 examination report. That fact is not necessarily probative of Dr. Gimenez's

possible status as Myers's treating physician in 1997, the year in which all three of his reports were authored. Likewise, Dr. Harrison's 1993 report which lists no personal physician for the claimant is not necessarily proof that he had none.

The ALJ also asserts that Dr. Gimenez changed his diagnosis without basis within five days. The two reports referred to are dated March 27, 1997, and April 1, 1997. Unlike the ALJ, we do not find these reports to be inconsistent. The first report does not expressly state a diagnosis, although Dr. Gimenez states that "I believe it is possible that this patient's original problem started with a chronic bronchitis from prolonged exposure to coal-dust in his early life" and that "pulmonary function tests and x-rays … show chronic obstructive pulmonary disease." In his second report, Dr. Gimenez clearly states that "it is my diagnosis that the patient suffers from severe chronic obstructive pulmonary disease and fibrosis. To the best of medical certainty, based on my examination of the patient and from his history of exposure to coal-dust and his early life in mining areas, the cause of the conditions existing in the patient's lungs are caused primarily by the inhaling of coal dust…."

It is apparent that Dr. Gimenez concluded in both reports that Myers suffers from severe chronic obstructive pulmonary disease (COPD) which he attributed at least in part to the inhalation of coal mine dust. Dr. Gimenez opined that Myers's cigarette smoking further aggravated his lung condition. The ALJ states that, "Pointedly, [Dr. Gimenez] did not diagnose pneumoconiosis." However, this statement fails to take into consideration the fact that Dr. Gimenez's opinion, if credited, *does* diagnose "statutory" pneumoconiosis, which the regulations define as:

a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.... For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

20 C.F.R. § 718.201. Accordingly, a diagnosis of COPD arising out of coal mine employment *is* a diagnosis of pneumoconiosis for the purposes of the regulations and entitlement to black lung benefits.

Dr. Harrison did not diagnose pneumoconiosis, but also diagnosed severe COPD which he attributed wholly to Myers's lengthy history of cigarette smoking. Dr. Kryda diagnosed severe COPD but, like Dr. Gimenez, attributed the disease to a combination of coal mine dust exposure and cigarette smoking. While the ALJ dismisses this opinion as to etiology as "unexplained," he ignores the fact that Dr. Harrison's sole attribution of the claimant's COPD to cigarette smoking is equally unexplained (although admitting that it is "tersely expressed"). Dr. Long's brief report was properly discounted because it relied upon an erroneous coal mine history of only one month.

We therefore conclude that this claim must be remanded for further consideration of the physicians' reports as they relate to the presence of statutory pneumoconiosis and causation of total disability. It is noted that, because the medical opinion evidence is unanimous (and the Director has conceded) that Myers is totally disabled due to his severe COPD, a finding that Myers suffers from statutory pneumoconiosis, i.e., COPD arising at least in part from his coal mine employment, would also strongly suggest a finding that Myers has also established the element of causation.

*See Cross Mountain Coal, Inc. v. Ward,* 93 F.3d 211, 216 (6th Cir.1996) (In order to establish that he is entitled to benefits, a miner must show that he is totally disabled due "at least in part" to his pneumoconiosis).

In light of the ALJ's failure to consider a diagnosis of statutory pneumoconiosis, as well as his failure to explain how Dr. Harrison's opinion on etiology is better explained than those of either Dr. Gimenez or Dr. Kryda, we find that the ALJ's decision and order is not supported by substantial evidence. We, therefore, grant Myers's petition for review and remand the case for further consideration of the medical evidence in accordance with this opinion.