*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0303P (6th Cir.)
File Name: 03a0303p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

PEABODY COAL CO. and OLD
REPUBLIC INSURANCE CO.,
       *Petitioners,*

   *v.*

MELBA J. ODOM and
DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
       *Respondents.*

No. 02-3085

On Petition for Review of a Decision of the Benefits
Review Board, United States Department of Labor.
No. 00-0752 BLA.

Argued: June 12, 2003

Decided and Filed: August 25, 2003

Before: KEITH, MOORE, and GIBBONS, Circuit Judges.

_____

#### COUNSEL

**ARGUED:** Mark E. Solomons, GREENBERG TRAURIG
LLP, Washington, D.C., for Petitioners. Jeffrey S. Goldberg,

---

Christian P. Barber, UNITED STATES DEPARTMENT OF
LABOR, OFFICE OF THE SOLICITOR, Washington, D.C.,
for Respondents. **ON BRIEF:** Mark E. Solomons, Laura
Metcoff Klaus, GREENBERG TRAURIG LLP, Washington,
D.C., for Petitioners. Jeffrey S. Goldberg, Christian P.
Barber, UNITED STATES DEPARTMENT OF LABOR,
OFFICE OF THE SOLICITOR, Washington, D.C., for
Respondents. Melba Odom, Sturgis, Kentucky, pro se.

_____

#### OPINION

_____

DAMON J. KEITH, Circuit Judge. Petitioners appeal from
a decision of the Benefits Review Board of the United States
Department of Labor affirming the award of black lung
benefits to respondent Melba J. Odom. For the reasons set
forth below, we **AFFIRM** the decision of the Benefits
Review Board.

### I. BACKGROUND

Lonnie Odom[1] worked as a coal miner for 21 years. For
the last five years of his career, he worked for the Peabody
Coal Company. His employment with Peabody and his career
as a miner both ended abruptly in 1976, when he was
seriously injured in a mine accident.[2] Also around this time,
Odom began to have breathing problems, for which he took
medication beginning in 1976 or 1977.

Odom filed a claim for benefits under the Black Lung
Benefits Act, 30 U.S.C. §§ 901-945, on October 9, 1979.

---

[1] Odom is deceased. Melba J. Odom is his widow.

[2] Odom applied for and received workers' compensation and Social
Security disability benefits for his injuries. The 1976 accident is not
relevant to Odom's claim for black lung benefits.

Department of Labor Administrative Law Judge (ALJ) Daniel Leland denied benefits on May 2, 1984. Odom did not appeal, and the decision became final.

On April 2, 1986, Odom filed a new application for benefits. The claim was governed by regulations contained in 20 C.F.R. Part 718. *See* 20 C.F.R. § 718.2 (2001). In order to establish entitlement to benefits under Part 718, a miner must prove that: (1) he has pneumoconiosis; (2) his pneumoconiosis arose at least in part out of his coal mine employment; and (3) he is totally disabled by pneumoconiosis. *See* C.F.R. §§ 718.202, 718.203, 718.204 (2001). Moreover, because this was Odom's second claim, he was also required to prove that he had suffered a "material change in conditions" following the denial of his first claim. 20 C.F.R. § 725.309(d) (1999).

The matter was assigned to ALJ Richard Huddleston. Judge Huddleston concluded that the criteria were met, and awarded benefits on January 31, 1992. Peabody Coal Company and its insurer, Old Republic Insurance Company (collectively referred to as "Peabody" hereinafter), appealed the award of benefits to the Benefits Review Board ("the Board"). The Board affirmed. Peabody then filed a petition for review in this Court. In an unpublished opinion dated January 24, 1995, this Court vacated the award and remanded the case to the ALJ for further consideration. *Peabody Coal Co. v. Odom*, 1995 WL 27497 (6th Cir. Jan. 24, 1995).

The matter was then assigned to ALJ Mollie Neal. Judge Neal concluded that the criteria for entitlement to benefits were met, and issued a decision awarding benefits on September 11, 1997. Peabody appealed, and the Board vacated the award and remanded the case to the ALJ for further consideration.

Judge Neal again awarded benefits on March 31, 2000. The Board affirmed, and Peabody again petitioned this Court for review. On appeal, Peabody contends that Judge Neal's

finding of a "material change in conditions" was not supported by substantial evidence. Peabody also contends that Judge Neal erred in relying on the diagnosis of Odom's treating physician in concluding that Odom was entitled to benefits, despite expert testimony that he did not have pneumoconiosis.

## II. DISCUSSION

### A. Standard of Review

We review a decision of the ALJ to award black lung benefits to determine whether it is supported by substantial evidence and is consistent with applicable law. *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995). When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, our scope of review is exceedingly narrow. Absent an error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by substantial evidence. *Id.* (internal quotation marks and citations omitted). More than a mere scintilla, substantial evidence is that which "a reasonable mind might accept as adequately supporting a conclusion." *Id.* As long as the ALJ's conclusion is supported by the evidence, we will not reverse, "even if the facts permit an alternative conclusion." *Id.* Questions of law are reviewed *de novo*. *Peabody Coal Co. v. Greer*, 62 F.3d 801 (6th Cir. 1995).

### B. Analysis

We begin with a summary of the medical evidence in this case. Between March 16, 1977 and June 11, 1996, several chest x-rays were performed on Odom. These x-rays produced two positive readings for pneumoconiosis and ten negative readings prior to May 2, 1984, the date his initial claim was denied. After May 2, 1984, there were six positive readings and thirteen negative readings.

On May 6, 1986, Dr. Valentino Simpao diagnosed Odom with coal workers' pneumoconiosis 1/1 and chronic bronchitis, related to his coal mine employment. Dr. Simpao concluded that Odom was moderately impaired and lacked the respiratory capacity to perform his usual coal mine employment.

On September 22, 1986, Dr. Wallas Bell, Odom's treating physician since the 1970s, reported that Odom was totally disabled by coal workers' pneumoconiosis. On November 13, 1989, Dr. Sam Traughber examined Odom and diagnosed him with coal workers' pneumoconiosis 2/2 and cardiovascular disease. Dr. Traughber stated that Odom should have no further exposure to coal mine dust.

In addition to these doctors, Odom was frequently seen by Dr. William Houser, described below as Odom's treating physician since 1980. Dr. Houser is a pulmonary specialist, board certified in internal medicine and pulmonary disease. On June 16, 1980, Dr. Houser diagnosed Odom with: (1) chronic bronchitis secondary to coal mine employment and cigarette smoking[3]; (2) possible coal workers' pneumoconiosis; (3) history of bilateral kidney trauma; and (4) possible hypertension. The record contains a letter from Dr. Houser to Odom dated October 16, 1987, encouraging him to stop smoking.

In Dr. Houser's treatment notes, an August 18, 1989 report diagnosed Odom with coal workers' pneumoconiosis 1/0, chronic bronchitis, and moderately severe chronic obstructive pulmonary disease. In a letter dated November 3, 1993, Dr. Houser noted recent x-ray and CT lung scan results showing nodular densities in the right lung, probably due to post-

[3]Shortly after his accident in 1976, Odom resumed smoking cigarettes after a twenty-year hiatus. There is some dispute as to how long he continued to smoke, but Odom admitted he was still smoking as late as 1988. Apparently, Odom's son lived with Odom and was a smoker as well.

inflammatory scarring. The letter stated that pneumoconiosis could be a contributing factor. On July 17, 1995, Dr. Houser stated that he had treated Odom for pneumoconiosis since 1991. On February 22, 1996, Dr. Houser stated his conclusion, based on pulmonary function studies, that Odom's pneumoconiosis was a significant factor contributing to his decrease in pulmonary function.

Dr. J. Selby examined Odom on June 11, 1996. Dr. Selby observed that, while Odom denied that he smoked, there was a strong smell of cigarette smoke about him. Dr. Selby found evidence of smoker's lung disease. Odom's chest x-ray was negative for pneumoconiosis, and Dr. Selby found no evidence of pneumoconiosis or any disease or impairment induced by exposure to coal dust. Dr. Selby stated that the decreases in Odom's pulmonary and respiratory functioning were consistent with the development of bronchial asthma, and that his coal mine employment was not a cause of any pulmonary or respiratory problems.

On August 17, 1996, Dr. G. Fino, a pulmonary specialist, reviewed Odom's medical records. Dr. Fino concluded that Odom did not have an occupationally acquired pulmonary condition. Dr. Fino based his findings on the following five factors: (1) the majority of the chest x-ray readings were negative for pneumoconiosis; (2) results of pulmonary function studies, which were generally normal when Odom gave adequate effort; (3) elevated lung volumes consistent with obstructive lung disease but not with pneumoconiosis; (4) Odom's normal diffusion capacity; and (5) the absence of an impairment of oxygen transfer.

Another pulmonary specialist, Dr. P. Tuteur, reviewed Odom's medical records on August 29, 1996. Dr. Tuteur found no evidence to support a diagnosis of significant pneumoconiosis. Rather, he diagnosed Odom with chronic bronchitis induced by cigarette smoke. Dr. Tuteur noted that Odom's pulmonary problems began in May of 1984, more than eight years after he had stopped working in a coal mine.

Dr. Tuteur opined that if Odom had contracted pneumoconiosis from working in the mine, symptoms would have begun to appear within a few years of his cessation of mine employment.

A claimant seeking benefits after an initial denial must prove that he has suffered a "material change in conditions" following the denial of his first claim. 20 C.F.R. § 725.309(d) (1999). To establish a material change in conditions, a claimant must prove, based on medical evidence of his condition since the initial denial, at least one of the elements previously adjudicated against him. *See Sharondale Corp. v. Ross*, 42 F.3d 993, 997-98 (6th Cir. 1994). "[N]o miner is entitled to benefits simply because his [initial] claim should have been granted." *Id.* at 998.

Judge Neal found that Odom had established a material change in conditions. Citing Dr. Houser's report, she concluded that Odom had established the presence of pneumoconiosis by newly submitted evidence. On appeal, Peabody contends that Judge Neal erred in finding a material change in conditions. Peabody first claims that Judge Neal misidentified the elements of entitlement adjudicated against Odom in his initial claim. Second, Peabody claims that Judge Neal failed to analyze the new evidence to determine if it established an element adjudicated against Odom the first time and was substantially more supportive of Odom's position. Third, Peabody claims that Judge Neal's finding is not supported by evidence.

Peabody's first contention in support of its argument that Judge Neal erred in finding a material change in conditions is without merit. Judge Neal found that Odom had developed pneumoconiosis. The ALJ who heard Odom's first claim found that Odom had failed to prove that he had pneumoconiosis. It is clear that Odom proved to Judge Neal one of the elements previously adjudicated against him. That is all the law requires.

Peabody's second contention is likewise without merit. Judge Neal found that Odom had pneumoconiosis, a totally disabling respiratory impairment. Her finding was based entirely on evidence relating to Odom's condition after May 2, 1984, the date on which his initial claim was denied.[4] In particular, Judge Neal focused on a series of pulmonary function tests performed after 1991 that demonstrated Odom's respiratory disability. She also credited the testimony of medical experts that Odom's respiratory impairment became totally disabling after 1984. Therefore, it is clear that Judge Neal did indeed analyze the new evidence and determined that it established that Odom had developed pneumoconiosis.

Peabody's third contention is also without merit. The main thrust of Peabody's third argument is that pneumoconiosis is not a latent or progressive disease. In other words, Peabody argues that a person cannot develop pneumoconiosis from exposure to coal dust after a period of years during which he was not employed as a coal miner. Peabody advanced this argument the first time this case came before this court, and we rejected it. *See Peabody Coal Co. v. Odom*, 1995 WL 27497 (6th Cir. Jan. 24, 1995). As we pointed out then, there is a long line of Sixth Circuit cases characterizing pneumoconiosis as progressive. *See Sharondale*, 42 F.3d at 996; *Woodward v. Director, OWCP*, 991 F.2d 314, 319 (6th Cir. 1993); *Saginaw Mining Co. v. Ferda*, 879 F.2d 198, 205 (6th Cir. 1989); *Orange v. Island Creek Coal Co.*, 786 F.2d

---

[4]We note that Judge Neal, in her material-change analysis, did refer to a document that was or could have been submitted in Odom's initial claim — a 1980 medical evaluation of Odom by Dr. Houser. Nevertheless, Judge Neal's opinion indicates that her finding of a material change due to the new evidence of pneumoconiosis did not consider the evaluation itself as new evidence supporting the finding of pneumoconiosis. The 1980 evaluation was used only to devalue the testimony of two of Peabody's doctors, who presumed that Odom did not have pneumoconiosis in 1980. Moreover, Neal's consideration of the 1980 evaluation was only one of the reasons why she chose to value Houser's post-1984 testimony over the two Peabody doctors.

724, 727 (6th Cir. 1986). The progressive nature of pneumoconiosis has also been recognized by the Supreme Court. *See Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 151 (1987). In light of these binding precedents, we must reject Peabody's argument that pneumoconiosis cannot arise or progress in the absence of continued exposure to coal dust.

In evaluating the medical evidence in this case, Judge Neal accorded additional weight to the opinions of Dr. Houser, Odom's treating physician. On appeal, Peabody takes issue with Judge Neal's preference for Dr. Houser's opinion. In *Tussey v. Island Creek Coal Co.*, we held that in black lung litigation, "opinions of treating physicians are entitled to greater weight than those of non-treating physicians." 982 F.2d 1036, 1042 (6th Cir. 1993). Peabody notes that the Supreme Court recently criticized the so-called "treating physician rule" in the context of disability determinations under employee benefit plans covered by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-53. *See Black & Decker Disability Plan v. Nord*, 123 S.Ct 1965 (2003). Peabody argues that in light of *Black & Decker*, courts should not prefer or defer to the opinions of treating physicians in cases brought under the Black Lung Benefits Act.

We recently considered the status of the treating physician rule in *Eastover Mining Co. v. Williams*, ___ F.3d ___, 2003 WL 21756342, at *1 (6th Cir. July 31, 2003). We noted that "this Court's jurisprudence is somewhat equivocal," *Eastover Mining*, 2003 WL 21756342, at *7, and that subsequent cases have limited *Tussey* by emphasizing that treating physicians are not automatically presumed to be correct, *id.* (citing *Peabody Coal Co. v. Groves*, 277 F.3d 829, 834 (6th Cir. 2002); *Wolf Creek Collieries v. Dir., OWCP*, 298 F.3d 511, 521 (6th Cir. 2002)). We also discussed *Black & Decker*, concluding that the Court's "critiques of the 'treating physician rule' apply with equal force to the notion that treating physicians should receive deference in black lung

proceedings." *Eastover Mining*, 2003 WL 21756342, at *7. We noted that "other circuits have . . . rejected the treating physician rule in black lung litigation," *id.* at *8, and that the relevant Department of Labor regulations do not call for automatic acceptance of the treating physician's opinion, *id.* After analyzing these authorities, we concluded that the opinions of treating physicians are not necessarily entitled to greater weight than those of non-treating physicians in black lung litigation. *Id.* at *9. Instead, "ALJs must evaluate treating physicians just as they consider other experts." *Id.*

*Eastover Mining* did not hold that deference to treating physicians is never appropriate. We simply stated that "in black lung litigation, the opinions of treating physicians get the deference they deserve based on their power to persuade." *Id.* "For instance," we continued, "a highly qualified treating physician who has lengthy experience with a miner may deserve tremendous deference, whereas a treating physician without the right pulmonary certifications should have his opinions appropriately discounted." *Id.*

Applying the standards set forth in *Eastover Mining*, we conclude that Judge Neal properly accorded additional weight to Dr. Houser's opinions. Judge Neal noted that Dr. Houser was a "highly qualified," board-certified pulmonary specialist. He treated Odom for at least 16 years, producing what Judge Neal described as "probative and persuasive medical reports." J.A. at 64. Judge Neal considered Dr. Houser's extensive treatment notes from 1980 through 1996. She found that Dr. Houser's opinion was well supported by his ongoing treatment of Odom and well documented in his treatment notes. She found that Dr. Houser's diagnosis of pneumoconiosis was supported by positive chest x-ray reports included in the record. Judge Neal described Dr. Houser's report as "the most persuasive" of the expert opinions she considered. In other words, Judge Neal gave deference to the "persuasive" opinions of a highly qualified physician who had

treated Odom for many years. Such deference is appropriate under *Eastover Mining*.

Peabody also claims that Judge Neal did not properly credit and weigh the other opinions in the record, as required by *Peabody Coal v. Groves*, 277 F.3d 829 (6th Cir. 2002). We disagree. In addition to Dr. Houser's opinion, Judge Neal also considered the opinions of Drs. Simpao, Bell, and Traughber, each of whom diagnosed Odom with pneumoconiosis. Contrary to suggestions in Peabody's brief, Judge Neal did not ignore the opinions of Drs. Selby, Fino, and Tuteur, each of whom found no evidence that Odom had pneumoconiosis. Judge Neal noted that these doctors based their conclusions that Odom did not have pneumoconiosis in part on a finding that pneumoconiosis was not evident in Odom in 1980, and that this finding was contradicted by Dr. Houser's 1980 diagnosis of Odom as having possible coal miner's pneumoconiosis.

Peabody argues that Judge Neal resolved the conflict between the examining physicians not on the basis of their reasoning and support, but solely based on Dr. Houser's unique status as the treating physician. That is not correct. Judge Neal considered the findings and opinions of the examining and treating physicians, the laboratory test results, and the qualifications of the physicians. She found that Dr. Houser's report was well-reasoned and that his opinions were supported by documents in the record. She stated that his report was "the most persuasive," repeatedly referring to his "probative and persuasive medical reports." J.A. at 64.

Nor did Judge Neal "resort to [Dr. Houser's] status to resolve the conflict in the record." Appellant's Br. at 38. Rather, she analyzed all of the relevant evidence, including the opinions of doctors who disagreed with Dr. Houser, and concluded that the presence of pneumoconiosis in Odom had been established.

Recalling the narrow scope of our review, we find that Judge Neal's decision to award benefits was supported by substantial evidence and was consistent with applicable law. While the facts in this case might permit an alternative conclusion, *see Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995), we must not disturb Judge Neal's decision in this case because it is supported by the evidence.

### III. CONCLUSION

For these reasons, the decision of the Benefits Review Board awarding black lung benefits is **AFFIRMED**.