NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0141n.06
Filed: February 23, 2006

No. 04-4297

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MOUNTAIN CLAY, INC.,

    Petitioner,

      v.

ROBERT L. SPIVEY; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

    Respondents.

Petition for Review of Order
of Benefits Review Board

_____/

**Before:**     **GUY, SUTTON, and MCKEAGUE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**     Petitioner Mountain Clay, Inc., the responsible operator, seeks review of the final decision of the Benefits Review Board (BRB) affirming an award of black lung benefits to retired coal miner Robert L. Spivey under the Black Lung Benefits Act. 30 U.S.C. §§ 901-45; 20 C.F.R. §§ 718.201-204 (2005). Petitioner argues that the ALJ (1) failed to make necessary findings or properly analyze whether Spivey demonstrated a "material change of condition" required for a subsequent claim for benefits, and (2) failed to properly weigh the medical opinion evidence in finding on the merits that Spivey had proved entitlement to benefits. Both Spivey and the Director, Office of Workers' Compensation Programs (Director), filed responses in support of the

award. After a review of the record and the arguments presented on appeal, we affirm the

BRB's final decision and order awarding benefits to Spivey.

**I.**

Robert Spivey, born October 17, 1924, worked more than thirty years in coal mining

and spent about 15 of those years working underground. There is no dispute that his last job

driving trucks and equipment required some heavy work. He smoked cigarettes for five to

seven years during his 20s, but then he stopped. In December 1989, at age 65, Spivey retired

from coal mining. He made his first claim for black lung benefits in May 1991. Two

medical opinions were obtained in connection with that claim. Drs. Dahhan and Broudy

concluded, based on a negative x-ray and the results of pulmonary function and blood gas

studies, that Spivey did not have pneumoconiosis and that, although he had mild respiratory

impairment, he retained the ability to perform his previous coal mining work.[1] The claim

was denied in October 1991, and Spivey did not appeal.

In April 1998, Spivey, then 73 years of age, made a second or "duplicate" application

for black lung benefits. This is the claim before us now. The Department of Labor (DOL)

concluded after administrative proceedings that Spivey was entitled to benefits. Mountain

Clay requested a hearing before an administrative law judge (ALJ), which was conducted in

July 1999. Benefits were awarded by the ALJ after the hearing and then twice more on

successive remands for further findings and reweighing of the evidence following petitioner's

---

[1]Dr. Dahhan diagnosed hypertension, obesity, and a history of bronchitis of "unknown etiology," while Dr. Broudy found hypertension, obesity, and "[c]hronic obstructive asthma with mild to moderate chronic obstructive airways disease." At 5' 7 3/4", Spivey weighed about 215 lbs. when he made his first claim for benefits in 1991. Later examination records show he weighed about 230 lbs. in May and July 1996; 215 lbs. in May and June 1998; and 200 lbs. in November 1998.

appeals to the BRB.

Without tracing all of the ALJ's findings, we focus on those findings affirmed by the BRB initially, after remand, or in denying reconsideration, as well as the BRB's conclusions concerning Mountain Clay's challenges to those findings. The award ultimately rested on the ALJ's determinations that Spivey established: (1) the existence of legal (but not clinical) pneumoconiosis; (2) which represented a "material change in conditions" since the denial of his first claim for benefits; (3) that the pneumoconiosis arose out of his coal mine employment; (4) that he had total respiratory disability from his prior coal mining work; and (5) that his disability was due at least in part to his pneumoconiosis.[2]

The ALJ's third decision awarding benefits, dated January 6, 2003, was affirmed by the BRB on February 26, 2004, and became final with the BRB's denial of the petitioner's motion for reconsideration on August 31, 2004. Mountain Clay filed the instant petition for review of the final BRB decision on October 26, 2004.[3]

## II.

The evidence submitted in connection with Spivey's second claim included seven medical opinions, 25 interpretations of six x-rays, and the results of various pulmonary function and blood gas studies. After considering the x-ray interpretations, only a few of which were "positive," the ALJ concluded that the weight of the x-ray evidence was negative

---

[2]"Pneumoconiosis" is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

[3]Although the last two BRB decisions were divided opinions, Mountain Clay does not rely on the dissenting member's view that it was not harmless error for the ALJ to have failed to consider evidence from the first claim in evaluating the second claim on the merits.

and did not establish medical or "clinical" pneumoconiosis.[4] This finding was affirmed by

the BRB, and is not at issue on appeal. However, "pneumoconiosis" is defined to include

not only "clinical pneumoconiosis," which is a medical condition characterized by the

fibrotic reaction of lung tissue to inhaled dust that may be detected by chest x-ray; but also

the broader category of "legal pneumoconiosis," which includes any chronic lung disease or

impairment, including restrictive or obstructive impairments, arising out of coal mining

employment. *Eastover Mining Co. v. Williams*, 338 F.3d 501, 509 (6th Cir. 2003); 20 C.F.R.

§ 718.201(a)(1) and (2). A disease "arising out of coal mine employment" is one that is

significantly related to, or substantially aggravated by, coal dust exposure. C.F.R. §

718.201(b).[5]

The ALJ found that Spivey established the existence of legal pneumoconiosis through

reasoned and supported medical opinion. 20 C.F.R. § 718.202(a)(4). After weighing the

medical opinion evidence, the ALJ credited the opinions of Dr. Baker, who examined Spivey

in May 1996 and May 1998, and Dr. Kiser, a family practitioner who was Spivey's treating

physician, and discounted, in whole or part, the opinions of Dr. Fino, who examined Spivey

in November 1998, and Drs. Branscomb, Chandler, Broudy, and Younes, who rendered

opinions based on a review of the medical records during the first part of 1999. Finally, in

---

[4]Dr. Wheeler, a radiologist, reviewed several of Spivey's x-rays; concluded that there was no evidence of clinical pneumoconiosis; and testified concerning the pattern of nodules typically found on x-rays of patients with clinical pneumoconiosis. He offered no opinions on the issue of legal pneumoconiosis.

[5]Also, "[i]f a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." 20 C.F.R. § 718.203(b). The ALJ found and Mountain Clay does not dispute that this presumption applied.

August 1999, Dr. Baker provided a written report detailing his findings, emphasizing that there were both positive and negative readings, and explaining why he did not agree with the contrary medical opinions.

We begin with Dr. Baker, whose opinion was given the greatest weight by the ALJ. He examined Spivey in May 1996 (in connection with a workers' compensation claim) and reported four diagnoses: (1) coal workers' (or medical) pneumoconiosis based on a positive x-ray and the significant duration of Spivey's exposure to coal dust; (2) moderate resting arterial hypoxemia based on the results of arterial blood gas studies; (3) chronic obstructive airway disease (COPD) with moderate ventilatory defect based on the results of pulmonary function studies he administered; and (4) chronic bronchitis based on Spivey's history of difficulty breathing, shortness of breath, dyspnea on exertion, and daily symptoms of cough, sputum production and wheezing. Concluding that Spivey was disabled and that his condition was related to his prior work, Dr. Baker relied on a positive x-ray interpretation, Spivey's significant exposure to coal dust, his minimal smoking history, and the absence of any other condition that would account for his respiratory changes.

Dr. Baker reexamined Spivey in May 1998, at the request of the DOL, and again diagnosed coal workers' pneumoconiosis, COPD with moderate ventilatory defect, moderate resting arterial hypoxemia, and chronic bronchitis. Dr. Baker again concluded that Spivey was disabled, but noted that the results of the pulmonary function tests administered at that time were questionable. In fact, the results of those pulmonary function studies were evaluated by Dr. Burki, at the DOL's request, and found to be invalid. When Dr. Baker repeated the pulmonary function studies on June 18, 1998, however, he obtained nearly

identical results that were subsequently validated by Dr. Burki.  Five pulmonary function studies were conducted in all, but only the June 1998 results were found to be valid.  The validated results reflected a moderate obstructive impairment.[6]

The other opinion given weight by the ALJ was from Dr. Kiser, a family practitioner who was Spivey's treating physician.  Dr. Kiser did not prepare a written report, but provided his treatment notes from a visit on April 29, 1999.  The notes from that date reported that Spivey had dyspnea on exertion of 20 feet, was unable to climb stairs, and experienced shortness of breath going from the bed to the bathroom.  This was consistent with Spivey's testimony before the ALJ in July 1999.  The treatment notes referenced both a positive x-ray reading and the results of the validated pulmonary function studies, and diagnosed Spivey as having "coal workers' pneumoconiosis with dyspnea on exertion of 20 feet," controlled hypertension, and mild ventricular dilation noted on echocardiogram.  Dr. Kiser also stated, without explanation, that in his opinion Spivey had a disabling pulmonary condition that was due at least in part to coal workers' pneumoconiosis.

In November 1998, Dr. Fino examined Spivey at the request of Mountain Clay.  Dr. Fino found that Spivey had no respiratory impairment at all, did not suffer from any occupationally acquired pulmonary condition, and retained the respiratory capacity to perform even heavy work.  Dr. Fino explained that the x-ray he reviewed was negative, that the blood gas studies were normal, and that pulmonary function studies he administered,

---

[6]Although Spivey's validated results would qualify a 71-year-old man of any height as disabled under the regulations, the table provided no values for a man who was 73 years of age.  The BRB reversed the ALJ's reliance on the tables in finding total respiratory disability, but concluded that the medical opinion evidence and work history provided substantial evidence to support a finding of total respiratory disability.

although not valid, showed normal diffusing capacities and unreduced total lung capacity that would rule out significant pulmonary fibrosis or restrictive lung disease. The ALJ discounted Dr. Fino's opinion in part because he relied on the absence of objective evidence of pulmonary impairment, but did not mention or take into account the validated pulmonary function studies from June 1998 that indicated moderate obstructive impairment. The BRB found that the ALJ was within her discretion in according this opinion little weight because it was based on an incomplete picture of Spivey's condition.

The remaining four opinions, all discounted in whole or part by the ALJ, were based on a review of medical records. In January 1999, Dr. Younes stated in response to a questionnaire from the DOL that Spivey had a disabling restrictive impairment that was "probably" due to occupational dust exposure with smoking as a contributing factor. But, the ALJ did not give this opinion much weight because it was equivocal and not reasoned. In March and July 1999, Drs. Chandler, Broudy, and Branscomb reviewed Spivey's medical records at the petitioner's request.

Dr. Branscomb found no evidence of coal workers' pneumoconiosis, of an impairment due to coal dust exposure, or of an inability to perform his previous coal mine or comparable work. His opinion rested on negative x-ray evidence, normal blood gas studies, and his analysis of several of the invalidated pulmonary function studies. Summarizing, Dr. Branscomb concluded that because there were no objective tests actually measuring Spivey's ability to breathe, there was no valid objective evidence of any pulmonary impairment. The ALJ discredited this opinion both initially and after remand for several reasons, including that Dr. Branscomb did not mention or evaluate the validated pulmonary function studies

from June 1998.

Drs. Chandler and Broudy both found Spivey had a pulmonary impairment and was disabled from his prior work, but they nonetheless concluded based on the negative x-ray evidence that his impairment was not due to pneumoconiosis. The BRB found that the ALJ was justified in discounting these opinions because they simply restated the negative x-ray results. *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000) (agreeing that restatement of x-ray does not constitute reasoned medical judgment); 20 C.F.R. § 718.202(b) ("No claim for benefits shall be denied solely on the basis of a negative chest X-ray.").

## III.

This court must affirm a final decision of the BRB unless it has committed legal error or exceeded its scope of review of the ALJ's findings. *Cornett*, 227 F.3d at 575. The ALJ's findings are conclusive if they are supported by substantial evidence and conform to applicable law. *Martin v. Ligon Prep. Co.*, 400 F.3d 302, 305 (6th Cir. 2005). Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion, "'even if the facts permit an alternative conclusion.'" *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003) (quoting *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).[7]

To prove entitlement to black lung benefits, a miner must show by preponderance of the evidence that he has pneumoconiosis, that his pneumoconiosis arose out of his coal

---

[7]Spivey states in his brief that he is entitled to the benefit of all doubt. However, the Supreme Court has held that the DOL's "true doubt" rule, under which evenly balanced evidence was resolved in the claimant's favor, impermissibly shifted the burden of proof away from the claimant and violated § 7 of the APA. *Dir., OWCP v. Greenwich Collieries*, 512 U.S. 267, 281 (1994).

mining employment, that he has a totally disabling respiratory condition, and that his disability is due at least in part to his pneumoconiosis. *Adams v. Dir., OWCP*, 886 F.2d 818, 826 (6th Cir. 1989). Because this claim was filed more than a year after the denial of his first claim for benefits, Spivey must first prove "a material change in conditions" since the denial of his first claim for benefits. 20 C.F.R. § 725.309(d) (1999).[8] Proof of a material change in condition protects the finality of the judgment on the prior claim, while recognizing that "res judicata is not implicated by the claimant's physical condition or the extent of his disability at two different times." *Sharondale Corp. v. Ross*, 42 F.3d 993, 998 (6th Cir. 1994).

## A.     Material Change in Condition

To award benefits on a claim filed more than a year after the denial of an earlier claim, the ALJ must first determine, based on all the evidence accompanying the new claim, that the miner has proved at least one of the elements of entitlement previously adjudicated against him. *Ross*, 42 F.3d at 997; *see also Grundy Mining Co. v. Flynn*, 353 F.3d 467, 480 (6th Cir. 2003). This court explained in *Kirk*, a case decided after the ALJ issued her second opinion, that to consider only the new evidence might allow relitigation of claims in which the old and new evidence was essentially the same but some legal error resulted in the denial of the first claim. *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 609 (6th Cir. 2001). "A 'material change' exists only if the new evidence both establishes the element *and* is

---

[8]Although 20 C.F.R. § 725.309(d) was revised effective on January 19, 2001, the new provision does not apply to claims such as this one that were pending on the effective date. *See* 20 C.F.R. § 725.2(c); *Grundy Mining Co. v. Flynn*, 353 F.3d 467, 476 n.3 (6th Cir. 2003) (current version, which does not include the "material change" language, does not apply to claims pending at the time it was adopted).

substantially more supportive of claimant." *Id.* The actual difference between the bodies of evidence represents the "change," while the "materiality" of the change is "marked by the fact that this difference has the capability of converting an issue determined against the claimant into one determined in his favor." *Id*. at n.6. For this reason, we held that the ALJ must also find, based on a comparison of the sum of the new evidence and the sum of the evidence considered in connection with the previously denied claim, that the evidence is sufficiently more supportive of the claim so as to warrant a change in outcome. *Id*; *see also Grundy*, 353 F.3d at 480.

Whether the ALJ and BRB applied the appropriate "material change" standard is a question of law that we review *de novo*. *Grundy*, 353 F.3d at 476. To the extent the determination rests upon factual findings, they are reviewed under the substantial evidence standard. *Id.*

### 1.     Findings

The ALJ found that a material change in condition had been established because the new evidence established pneumoconiosis—an element previously adjudicated against Spivey. However, as petitioner argues, the ALJ made no findings comparing the old and new bodies of evidence to determine the materiality of the change. This error was raised by Mountain Clay in its second appeal to the BRB. Although vacating the award for other reasons, the BRB found that the failure to make this comparison was harmless error in this case. The BRB explained that:

> A review of the record in this case reveals that the earlier evidence on which the denial of claimant's prior claim was premised contains no evidence of pneumoconiosis or disability, *see* Director's Exhibit 34. The evidence

> submitted with claimant's prior claim consists of four negative readings of two x-rays, two non-qualifying pulmonary function studies and two non-qualifying blood gas studies, as well as medical opinions from Drs. Dahhan and Broudy, neither of whom diagnosed pneumoconiosis or found that the claimant was totally disabled, *id*. Thus, as there was no evidence of pneumoconiosis in the earlier claim, any error by the administrative law judge in failing to compare the sum of the new evidence, which the administrative law judge found established the existence of pneumoconiosis, with the earlier evidence, on which the denial of claimant's prior claim had been premised, in accordance with the Sixth Circuit's holdings in *Kirk*, *supra*, and *Ross*, *supra*, was harmless[.]

Petitioner contends that the BRB exceeded the scope of its review in finding this error was harmless. While the BRB reviews the ALJ's factual findings under the substantial evidence standard, even the case cited by petitioner recognized that the harmless-error doctrine can apply in this context. *Sahara Coal Co. v. OWCP, U.S. Dept. of Labor*, 946 F.2d 554, 558 (7th Cir. 1991) ("If the outcome of a remand is foreordained, we need not order one."). The error in *Sahara* was not harmless because comparison of the old and new medical evidence presented a factual issue.

Similarly, this court remanded for further findings in *Ross*, but only after comparison of the evidence revealed a factual question on whether there was a material change in condition. There, the ALJ specifically found that new positive x-ray evidence established pneumoconiosis and therefore also a material change in condition, but did not discuss how the evidence differed qualitatively between the new and old claims. That did not end the inquiry, however, as this court then compared the two bodies of evidence. Because the record showed there was evidence of both positive and negative x-ray interpretations accompanying the new as well as the old claims, the court could not discern from the record whether the ALJ had merely reached a different decision on essentially the same evidence

or whether the claimant had shown a material change in his condition since the earlier denial. As a result, the claim was remanded for further findings.

In contrast, remand was not required in *Kirk*, despite the ALJ's errors in assessing whether there was a material change, because there was substantial evidence in the developed record to support a finding that the claimant had demonstrated a material change in condition as to an element previously adjudicated against him. With respect to the material change, the court explained that: "Although there had been some diagnoses of pneumoconiosis prior to [the denial of his first claim], its presence has become generally acknowledged among his treating physicians after the filing of his fourth claim." *Kirk*, 264 F.3d at 609. The court also noted that it was not necessary for there to be a complete absence of evidence of pneumoconiosis at the earlier date; only that there was a substantial difference in the two bodies of evidence. *Id.* at 609-10. Because both the ALJ and BRB in *Kirk* relied on the new evidence of pneumoconiosis, a factual record had been developed on the element, albeit not in relation to the material change requirement, that was sufficient to support the BRB's conclusion that the claimant had proved a material change in condition. *Id.* at 610.

In this case, comparison of the bodies of evidence from the new and old claims does not reveal a factual question that must be remanded to the ALJ. The record shows that while the sum of the evidence submitted with the earlier claim included no findings of pneumoconiosis or disability, the sum of the later evidence included two findings of pneumoconiosis, one validated pulmonary function test showing moderate pulmonary impairment, and the recognition by five out of seven physicians that Spivey had a totally

disabling respiratory impairment.[9]  We have no trouble finding that substantial evidence in the record supports a finding that the new evidence demonstrates a material change in condition when compared to the evidence on which the first denial was premised with respect to not only the existence of pneumoconiosis but also the element of disability.  Therefore, we agree that the ALJ's failure to compare the new and old evidence was harmless error.

### 2.        Materiality

Stepping away from the standard articulated in *Kirk*, Mountain Clay draws on general principles of finality and *res judicata* to argue that the change in Spivey's condition could not have been material absent proof either that he had additional coal dust exposure since the denial of the prior claim, or that he had a type of pneumoconiosis (such as massive fibrosis or silicosis) known to be latent or progressive in the absence of further coal dust exposure. In support of this contention, Mountain Clay suggests that this court has previously relied on the miner's return to coal mine work in evaluating the material change requirement.  On the contrary, none of the cases cited placed importance on continued coal dust exposure in evaluating whether a change in condition had been established.

In *Ross*, the miner's return to work between the denial of the first and the filing of the second claims was deemed relevant to the statute of limitation issue, but was not mentioned in connection with adoption of the standard for proving a material change in conditions.  42 F.3d at 996.  On the other hand, the fact that the miner in *Grundy* worked until just before filing his second claim for benefits was not mentioned as part of the material change

---

[9]In fact, Dr. Broudy, the only physician to evaluate Spivey in connection with both claims, found no disability at the time of the first claim and total disability at the time of the second.

calculus. *Grundy*, 353 F.3d at 471. All that is required for materiality is that the new evidence be sufficiently different to warrant a different outcome on one or more elements of entitlement. *Id.* at 482.

Mountain Clay is arguing, at bottom, that there is no proof that legal pneumoconiosis is capable of progression or latent manifestation after the miner's exposure to coal dust has ended. This is not the first time we have been asked to hold that a miner cannot develop legal pneumoconiosis arising out of coal mine employment without experiencing additional exposure to coal dust. We rejected just such an argument in *Odom*, reiterating that pneumoconiosis has been recognized as progressive in nature. *Peabody Coal Co. v. Odom*, 342 F.3d 486, 491 (6th Cir. 2003). It is petitioner's position that *Odom* is not controlling because it relied on case law that predated the DOL's review of the medical literature in revising the regulations to provide that "'pneumoconiosis' is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c).

This revision was upheld against a challenge by the National Mining Association (NMA), but only upon the DOL's concession that, while pneumoconiosis *may* be latent and progressive, "the most common forms of pneumoconiosis are not latent" and "latent and progressive pneumoconiosis is rare." *Nat'l Mining Ass'n v. Dept. of Labor*, 292 F.3d 849, 863 (D.C. Cir. 2002). Although the NMA argued that the revised regulation created an irrebuttable presumption that pneumoconiosis was progressive, the court held that the regulation "simply prevents operators from claiming that pneumoconiosis is *never* latent and progressive." *Id.* (emphasis in original).

The NMA also argued that the regulation was not supported by the scientific studies, two of which reported that pneumoconiosis is latent and progressive in at most 8%, or as many as 24% of cases. *Id.* at 869. The court construed the regulation narrowly to mean, as counsel for the DOL conceded at oral argument, that pneumoconiosis *can be* a progressive and latent disease. *Id.*; *see also Midland Coal Co. v. Dir., OWCP (Shores)*, 358 F.3d 486, 490 (7th Cir. 2004) (holding that DOL's conclusion that scientific evidence showed pneumoconiosis can be latent and progressive was entitled to deference). Further, the Seventh Circuit in *Shores* expressly held that the decision in *National Mining* does not require a miner bringing a second or subsequent claim for benefits to prove that he suffered from a type of pneumoconiosis that has been found in the medical literature to be progressive and/or latent. *Shores*, 358 F.3d at 491. We agree that proof of a material change in conditions based on a finding of pnemoconiosis does not require the claimant to prove either exposure to coal dust since the denial of his first claim, or that he has a kind of pneumoconiosis known to be latent and progressive.

## B.    Substantial Evidence

On the merits, Mountain Clay maintains that substantial evidence does not support the ALJ's findings on causation; specifically, that Spivey established pneumoconiosis arising out of his coal mine employment and that his total respiratory disability was due at least in part to his pneumoconiosis. No challenge is made to the ALJ's findings, based on the credible medical opinion evidence, that Spivey had chronic obstructive pulmonary disease (COPD) or that he was totally disabled from his prior coal mine or comparable work. Nor does Mountain Clay contend that the ALJ erred in deciding to discount in whole or part the

opinions of Drs. Fino, Branscomb, Chandler, Broudy, and Younes.

Before attacking the ALJ's reliance on the credited opinions, petitioner asserts that the ALJ impermissibly shifted the burden of proof from the claimant by crediting the opinions of Drs. Baker and Kiser simply because she was not persuaded by the other medical opinions. It is clear, however, that the ALJ's findings were based on the medical opinion evidence that she found was credible and reasoned and not simply a lack of credible evidence to the contrary. As petitioner acknowledges, the existence of legal pneumoconiosis and disability due to pneumoconiosis, as well as the causes of a miner's total disability may be established through a physician's reasoned and supported medical opinion based on objective medical evidence such as x-rays, blood gas and pulmonary function studies, physical examination, and medical and work histories. 20 C.F.R. § 718.202(a)(4), and 20 C.F.R. § 718.204(b)(2)(iv) and(c)(2). The ALJ's assessment of the medical opinion evidence is a credibility issue that we review for substantial evidence. *Grundy*, 353 F.3d at 484.

### 1.      Dr. Kiser's Opinion

The ALJ credited the opinion of Dr. Kiser in her initial opinion and after remand. Noting that his opinion was based on a positive x-ray interpretation and the validated pulmonary function studies, the ALJ emphasized that: "Dr. Kiser has been Mr. Spivey's treating physician for five years, and is thus familiar with his history and symptoms over time. His conclusions are based on his examinations of Mr. Spivey, Mr. Spivey's clinical symptoms, and the objective laboratory test results." Petitioner objected to the weight the ALJ accorded his opinion for several reasons, including that the ALJ had mechanically accorded it greater weight based solely on his status as a treating physician.

The BRB twice found that the ALJ had provided a reasoned basis for crediting the treating physician's opinion over other medical opinions. In denying reconsideration, the BRB also found that the reasons given by the ALJ for crediting Dr. Kiser's opinion were consistent with this court's holding that a physician's opinion is not entitled to any greater weight based solely on his status as a treating physician. *Eastover Mining Co. v. Williams*, 338 F.3d 501, 511-13 (6th Cir. 2003) (abrogating *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036 (6th Cir. 1993)).  Rather, the weight to be accorded a treating physician's opinion is based on its power to persuade. *Id.* at 513; *see also* 20 C.F.R. § 718.104(d).

We find, however, that the medical records from Dr. Kiser—namely, the treatment notes and response to the letter from Spivey's counsel—do not provide any basis for crediting his opinion except for the fact that he was a treating physician who must have been familiar with Spivey's history and condition.  More importantly, as the Director concedes on appeal, Dr. Kiser diagnosed only coal worker's pneumoconiosis, which the ALJ found had not been proved, and offered no opinion to support a finding of legal pneumoconiosis.  Also, while Dr. Kiser agreed that Spivey had a disabling pulmonary condition, he provided no basis for that conclusion.  As a result, we conclude that Dr. Kiser's opinion does not provide substantial evidence to support the ALJ's findings of legal pneumoconiosis and disability due at least in part to pneumoconiosis.  This brings us to Dr. Baker's opinion, which the record shows was accorded the greatest weight.

### 2.      Dr. Baker's Opinion

Dr. Baker, who examined Spivey twice and reviewed all the medical opinion evidence, made the following diagnoses:  (1) coal workers' pneumoconiosis based on a

positive x-ray and Spivey's significant history of coal dust exposure; (2) COPD with moderate ventilatory defect based on the pulmonary function studies; (3) moderate resting arterial hypoxemia based on the results of arterial blood gas studies; and (4) chronic bronchitis based on his history of difficulty breathing, shortness of breath, dyspnea on exertion, and daily symptoms of cough, sputum production, and wheezing. He specifically found that the first two diagnoses were related to Spivey's coal mine employment: clinical pneumoconiosis because of his long history of coal dust exposure and no other condition that would produce abnormal x-ray results; and COPD because of his lengthy exposure to coal dust, his minimal history of cigarette smoking, and the absence of any other condition that would account for his respiratory changes. Dr. Baker also stated that Spivey has "obstructive airway disease related to the inhalation of coal dust which is a known cause of obstructive airway disease." In reaching his opinion, Dr. Baker relied on the physical examinations he performed, Spivey's personal and work histories, the only validated pulmonary function studies in the record, and the positive interpretations of the x-ray evidence.

Mountain Clay contends that substantial evidence does not support the ALJ's finding that Dr. Baker's opinion was well-reasoned and consistent with the objective medical evidence for several reasons. First, petitioner points to Dr. Baker's reliance on the positive x-ray interpretations that the ALJ found were outweighed by the negative x-ray readings. The ALJ acknowledged this, but found that rejection of the underlying positive x-ray evidence did not significantly detract from the weight Dr. Baker's opinion should receive because his opinion was also based on other objective evidence. This, it is argued, was error because it is not clear that Dr. Baker would have given the same opinion if he had assumed

the x-ray evidence was negative. We disagree. Dr. Baker provided independent diagnoses of coal workers' pneumoconiosis, which did rely on the positive x-ray readings, and COPD, which did not. Nor is petitioner's reliance on *Cornett* persuasive. *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000).

In *Cornett*, the ALJ *discredited* the medical opinion evidence (including an opinion from Dr. Baker) in denying the claim for benefits. We held that the ALJ erred by mischaracterizing the medical opinion evidence as being merely a restatement of the positive x-ray evidence when the record actually showed that the opinions were based on factors other than the positive x-ray results, such as physical examinations, work history, smoking history, and pulmonary function studies. This was particularly true, we noted, since Dr. Baker had also stated that the objective and clinical evidence supported a diagnosis of coal workers' pneumoconiosis notwithstanding a negative x-ray. In this case, the ALJ credited Dr. Baker's opinion, recognizing that it was based on other objective evidence, and relied on it in finding the existence of legal pneumoconiosis and disability due to pneumoconiosis.

Finally, arguing that the ALJ erred in crediting Dr. Baker's opinion as to causation, petitioner argues that he failed to provide a reasoned basis for finding disease causation (that his COPD was substantially related to coal dust exposure), and did not consider the possible role of other risk factors in finding disability causation (that his pneumoconiosis is a substantially contributing cause of his disability). First, Dr. Baker explained that Spivey had many years of exposure to coal dust, which is a known cause of obstructive airway impairment, and no other condition that would explain his impairment. This provided a reasoned basis for the opinion. Second, petitioner faults Dr. Baker for not considering the

possibility that Spivey's COPD could have been caused by age, obesity, or hypertension. Yet, in finding causation, Dr. Baker noted the absence of any other condition that would account for Spivey's respiratory changes. Nor is this a case in which conflicting medical opinions attributed the miner's chronic lung impairment to other causes (*i.e.*, cigarette smoking). We find the ALJ's assessment of Dr. Baker's medical opinion is supported by substantial evidence.

The BRB's decision and order awarding black lung benefits to Spivey is **AFFIRMED.**