NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0463n.06

Case No. 25-3080

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 14, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CUMBERLAND RIVER COAL COMPANY, | ) | |
| Petitioner, | ) ) | |
| | ) | |
| v. | ) ) | ON PETITION FOR REVIEW OF A DECISION AND ORDER OF THE |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; CARLOS STURGILL, | ) ) ) ) ) | BENEFITS REVIEW BOARD |
| | ) | OPINION |
| Respondents. | ) | |

Before: GRIFFIN, THAPAR, and MATHIS, Circuit Judges.

THAPAR, Circuit Judge. Cumberland River Coal Company petitions for review of an award of federal black-lung benefits to former miner Carlos Sturgill. Cumberland argues the adjudicator didn't properly weigh the expert testimony in Sturgill's case. But the adjudicator's credibility determinations were reasonable, so we deny the petition.

I.

Carlos Sturgill worked underground in the Kentucky coal mines for more than twenty-five years. He mined most recently for the Cumberland River Coal Company (Cumberland). Sturgill shoveled coal and operated heavy equipment like shearers, ram cars, and shuttle cars. The decades of hard work took a toll on his body. Sturgill had a heart attack in the mines before he retired in 2007. A year after his retirement, he had open heart surgery with four bypasses. He also struggled with shortness of breath, wheezing, coughing, and chronic bronchitis.

So Sturgill sought benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901–945. The BLBA provides coal miners the opportunity to collect benefits based on total disability from a disease called pneumoconiosis. *Id.* § 901(a). In the BLBA, Congress authorized the Secretary of Labor to issue regulations defining total disability, subject to certain restrictions. *Id.* § 902(f).

Those regulations recognize two types of pneumoconiosis. The first, *clinical pneumoconiosis*, incorporates the medical definition of pneumoconiosis: a list of specific respiratory diseases caused by dust particles in the lungs that often come from working in coal mines. 20 C.F.R. § 718.201(a)(1). The second, *legal pneumoconiosis*, is broader. It includes "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." *Id.* § 718.201(a)(2). A miner can claim benefits based on total disability from either clinical or legal pneumoconiosis. And according to the Secretary's regulations, a miner is totally disabled if he has a "pulmonary or respiratory impairment" that blocks him from doing his "usual coal mine work." *Id.* § 718.204(b)(1).

Thus, to receive BLBA benefits, Sturgill had to show that he has either clinical or legal pneumoconiosis that arose at least in part from working in the mines and that his pneumoconiosis contributes to him being unable to perform his "usual coal mine work." *Id.* § 725.202(d).

In 2010, Congress made this showing easier. It amended the BLBA to include a rebuttable presumption in favor of claimant miners. *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 479 (6th Cir. 2011). Under that amendment, if a miner shows (1) he worked underground for at least fifteen years and (2) he has a "totally disabling respiratory or pulmonary impairment," he's presumed disabled because of pneumoconiosis. 30 U.S.C. § 921(c)(4).

Sturgill pursued these BLBA benefits. But his first claim was denied in 2016. Because his first claim failed, Sturgill had to bring new evidence about his physical condition showing his entitlement to benefits if he wanted to apply again. 20 C.F.R. § 725.309(c)(4). So Sturgill filed a second claim in 2018 and produced further medical testing. An adjudicator awarded Sturgill benefits based on this new claim. Cumberland appealed this award before an Administrative Law Judge (ALJ) with the Department of Labor, who rejected the appeal and granted Sturgill's claim for benefits. A panel of the Benefits Review Board (BRB) affirmed the ALJ's decision and then denied reconsideration. Cumberland timely petitioned for review.

## II.

We review the ALJ's factual conclusions for substantial evidence and legal conclusions de novo. *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003). So we'll reverse the ALJ's factual findings only if no reasonable mind would agree with the ALJ. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068–69 (6th Cir. 2013). Cumberland challenges the ALJ's factual finding that Sturgill was totally disabled. Since a reasonable mind could agree with that finding, Cumberland's challenge fails.

## A.

The ALJ considered three experts' reports and concluded that Sturgill was totally disabled based on determinations about those experts' credibility. We generally don't revisit credibility determinations. *A & E Coal Co. v. Adams*, 694 F.3d 798, 803 (6th Cir. 2012). So our review of the ALJ's conclusion on this issue is "exceedingly narrow." *Peabody Coal*, 342 F.3d at 489.

First, Dr. Mahmood Alam concluded that Sturgill had pneumoconiosis causing a pulmonary disability. Dr. Alam based this conclusion in part on an arterial blood gas (ABG) test, which measures, among other things, the amount of oxygen in a patient's blood. That ABG test

revealed that Sturgill wasn't getting enough oxygen at rest. Under BLBA regulations, the ABG test results established total disability on their own. *See* 20 C.F.R. § 718.204(b)(2)(ii). And Dr. Alam also found that Sturgill couldn't do anything "exertional" because of his difficulty breathing. JA 66. Since Dr. Alam showed that Sturgill wasn't getting enough oxygen at rest and had difficulty breathing such that he couldn't do anything "exertional," the ALJ had substantial evidence to find a well-reasoned explanation of total disability.

Cumberland objects that Dr. Alam didn't sufficiently address a second ABG test with contradictory results. That is wrong. It's true that a later ABG test of Sturgill by a different doctor didn't meet the regulatory level for total disability. But Dr. Alam reviewed that test and gave a reasonable explanation for the variation. He noted that Sturgill's cardiac problems and lack of mobility could cause variable test results. Dr. Alam called this variability "common" in patients like Sturgill. *Id.* at 44. And Dr. Alam maintained his conclusion that Sturgill was disabled and unable to go back to work. This chain of reasoning gave the ALJ a sufficient basis to treat Dr. Alam's conclusions as probative.[1]

The ALJ also had substantial evidence to give less weight to the two experts who found that Sturgill was not totally disabled.

Start with Dr. Abdul Dahhan. Dr. Dahhan administered Sturgill's second ABG test—the one that didn't meet the regulatory levels for total disability. He concluded Sturgill didn't have a pulmonary disability and could physically return to the mines.

---

[1] Cumberland also argues the ALJ lacked a sufficient basis to find that shortness of breath alone establishes disability. But Dr. Alam's conclusion didn't rely on shortness of breath alone. He also found through testing that Sturgill wasn't receiving enough oxygen. Since Dr. Alam concluded that these impairments prevented Sturgill from performing his coal-mine work, the ALJ could reasonably find total disability. *See* 20 C.F.R. § 718.204(b)(1)(i).

But the ALJ identified several reasonable issues with Dr. Dahhan's analysis. For instance, Dr. Dahhan did not discuss exactly how much exertion Sturgill's mining work required. Dr. Dahhan admitted that Sturgill would struggle breathing on a flight of stairs, but he didn't square that with his conclusion that Sturgill could go back to work. And Dr. Dahhan didn't review the first ABG test, which did meet the regulatory level for total disability. Because he didn't review that test, he couldn't discuss whether Sturgill's differing results were a natural variation for someone with heart problems, as Dr. Alam had concluded. All these concerns gave the ALJ a reasonable basis to deem Dr. Dahhan's opinion less probative.

Cumberland's arguments against the ALJ's credibility decisions do not affect our "exceedingly narrow" review. *Peabody Coal*, 342 F.3d at 489. Cumberland first contends that Dr. Dahhan's failure to review the first ABG test shouldn't affect his credibility, since the most recent evidence matters most. But the precedent Cumberland cites undermines that conclusion. Because pneumoconiosis is a progressive and irreversible disease, those who have it only get worse, not better. *Mullins Coal Co., Inc. of Va. v. Dir., OWCP*, 484 U.S. 135, 151 (1987). So Cumberland's "later evidence" rule only makes sense when the more recent evidence shows the claimant's condition has worsened. *Woodward v. Dir., OWCP*, 991 F.2d 314, 319–20 (6th Cir. 1993). Here, the opposite is true: Sturgill's earlier ABG test was qualifying, and his more recent test was not. And because pneumoconiosis patients don't improve, Sturgill's two ABG tests are "irreconcilable" and must be reviewed for reliability "without reference to their chronological relationship." *Id.* at 319. Since Dr. Dahhan never even reviewed the earlier ABG test, let alone reconciled it with the second, the ALJ had a reasonable basis to give Dr. Dahhan's opinion less weight.

Cumberland's second objection fares little better. It argues that the ALJ couldn't discredit Dr. Dahhan's testimony based on his failure to explain how Sturgill could physically return to his work if he struggled breathing on a flight of stairs. Breathlessness isn't necessarily disabling, Cumberland contends, and a layperson can't assert that it is a disability. But an ALJ can—and should—analyze potential flaws in an expert's reasoning. *See Huscoal, Inc. v. Dir., OWCP*, 48 F.4th 480, 492–93 (6th Cir. 2022). When Dr. Dahhan declared that Sturgill had "the physiological capacity to return to his previous coal mining work," he opened the door to questions about that conclusion. JA 27. And the ALJ asked a reasonable question: How does someone who's short of breath on a staircase have the capacity to go back to a physically demanding job? That's an important question, since the definition of total disability requires finding that the miner couldn't perform his "usual coal mine work." 20 C.F.R. § 718.204(b)(1)(i). Because the ALJ didn't believe Dr. Dahhan answered this important question well enough, it was reasonable to give Dr. Dahhan's opinion less weight.

Dr. David Rosenberg was the final expert. He, like Dr. Dahhan, found that Sturgill wasn't disabled. But unlike Dr. Dahhan, Dr. Rosenberg reviewed all the previous tests and testimony that had come before him in reaching his conclusion.

Yet there were potential problems with Dr. Rosenberg's conclusion. Yes, Dr. Rosenberg concluded that Sturgill's *second* test results did not meet the qualifying level for total disability. But Dr. Rosenberg didn't critique Dr. Alam's *first* ABG test that showed disability. He merely stated that Sturgill's "blood gases have improved over time," JA 48, without addressing Dr. Alam's reasoned conclusion that Sturgill's later, non-qualifying results do not necessarily negate his earlier, qualifying results.

In addition, Dr. Rosenberg acknowledged that Sturgill struggled with shortness of breath on exertion, but he (like Dr. Dahhan) never explained how Sturgill could nonetheless return to his physically demanding job. Cumberland believes Dr. Rosenberg's conclusion that Sturgill wasn't "disabled from a pulmonary perspective" suffices to negate total disability. *Id.* But the BLBA allows a finding of total disability when a physician concludes that a "respiratory or pulmonary condition" prevents a miner from resuming his usual coal-mine work. 20 C.F.R. § 718.204(b)(2)(iv). Dr. Rosenberg accepted that Sturgill had "various respiratory symptoms," yet still didn't discuss whether Sturgill could resume his work in the mines. JA 48. Therefore, the ALJ gave Dr. Rosenberg's opinion little weight. And once again, our "exceedingly narrow" review finds this credibility determination reasonable. *See Peabody Coal*, 342 F.3d at 489.

Cumberland's response boils down to the claim that Dr. Rosenberg *did* consider Sturgill's shortness of breath in coming to his conclusion that Sturgill wasn't disabled. But Dr. Rosenberg never explicitly dealt with this evidence—he relied only on Dr. Dahhan's testing and Sturgill's lack of medical visits for respiratory issues to conclude that Sturgill had "normal lung function." JA 50. As with Dr. Dahhan, the ALJ could reasonably believe that Dr. Rosenberg did not account for the evidence well enough to merit as much credibility as Dr. Alam.

Federal regulations allowed the ALJ to conclude that Sturgill was totally disabled, because Dr. Alam, a "physician exercising reasoned medical judgment," also reached that conclusion. 20 C.F.R. § 718.204(b)(2)(iv). And a reasonable mind could have agreed with the ALJ that Dr. Dahhan and Dr. Rosenberg were less credible. *See Big Branch Res.*, 737 F.3d at 1068–69. We leave these "determinations to credit or discredit" medical experts to the ALJ. *Id.* at 1073. So Cumberland's challenge fails.

B.

Cumberland also contends that the ALJ gave the wrong start date for Sturgill's benefits. Those benefits start in the "month of onset of total disability." 20 C.F.R. § 725.503(b). If the evidence doesn't establish the month when disability began, benefits start in the month of filing. *Id.* Here, the ALJ didn't find a precise onset date in the evidence and thus started benefits in June 2018, the month of filing. Cumberland argues this decision was in error because ABG testing conducted a year later didn't show Sturgill was totally disabled.

But again, Cumberland's precedent cuts the other way. The BRB has held that "*uncontradicted* medical evidence" proving lack of disability after filing could prevent month-of-filing benefits. *Edmiston v. F & R Coal Co.*, 14 Black Lung Rep. (Juris) 1-65 (Ben. Rev. Bd. 1990) (emphasis added); *see also Lykins v. Dir., OWCP*, 12 Black Lung Rep. (Juris) 1-181 (Ben. Rev. Bd. 1989) (same); *Rochester & Pittsburgh Coal Co. v. Krecota*, 868 F.2d 600, 603 (3d Cir. 1989) (finding "[n]o contradictory evidence"). Here, however, the medical evidence was far from uncontradicted. Even after reviewing the later testing, Dr. Alam still found that Sturgill was disabled. And the ALJ credited Dr. Alam's testimony. Based on this contradictory medical evidence, the ALJ could find that Sturgill's total disability should date to the month of filing.

In essence, Cumberland's objection to the onset date rehashes the issue of the three experts' credibility. Because the ALJ had substantial evidence to conclude that Sturgill was totally disabled, the ALJ could also start Sturgill's benefits in the month of filing.

\* \* \*

We deny the petition.